STATE OF NEBRASKA, APPELLEE, V. TIMOTHY R. WILLIAMS, APPELLANT.
352 N.W.2d 576

Filed July 20, 1984.   No. 83-860.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ.

GRANT, J.

Defendant, Timothy R. Williams, was charged with receiving stolen property (a 1983 Lincoln Continental automobile) and with carrying a weapon "concealed on or about his person." After jury trial Williams was acquitted of the receiving stolen property charge and convicted of the charge of carrying a concealed weapon. He appeals his conviction, alleging that the court failed to properly instruct the jury and that his sentence of 1 to 2 years in the penal complex was excessive. For the reasons hereinafter stated we reverse and remand for a new trial.

The evidence shows that on July 31, 1983, at approximately 3 a.m., Williams and his codefendant, Cedric Johnson, were arrested in Omaha, Nebraska, while in a 1983 Lincoln Continental automobile of a value of approximately $20,000. This car had been reported stolen from a Lincoln, Nebraska, new car dealer on July 25, 1983. After a report of gasoline stolen from a filling station in Carter Lake, Iowa, by two men in a 1983 Lincoln Continental had been broadcast over the police radio, the car was seen, followed, and ultimately stopped at 24th and Bristol Streets in Omaha. Williams was driving the car, and Johnson was the passenger. The police searched the car for contraband, and discovered a pellet gun, which looked like a .357-magnum firearm, in the glove compartment and an 8½-inch-long "serrated steak knife," with a blade 4¾ inches long, beneath the driver's seat. This knife was eleven-sixteenths of an inch wide at its widest point, tapering to a point, and had a wooden handle. It was, in short, a table steak knife as used in dining.

Johnson and Williams were tried together. Johnson did not testify, but Williams did. Williams testified he was 19 years old

and had known Johnson for some years; that on the evening of July 30, 1983, Williams had walked to his brother's house; that at about 10 p.m. Johnson drove up to the house in the new Lincoln Continental; and that Johnson told Williams the car belonged to a friend and asked Williams if he wanted to go riding. Williams further testified that he got into the car on the passenger's side; that at the time he had the pellet gun in his hand that he had earlier taken away from his young nephew who had been playing with it; that the pellet gun was owned by Williams' brother; and that he placed the pellet gun in the glove compartment.

Williams further testified that later in the evening he took over driving the car because Johnson was not driving well and Williams was a more experienced driver. Williams testified that he had no knowledge of the knife underneath the seat and that he had never seen it before.

With regard to defendant's allegation that the jury was improperly instructed, he takes the position that the jury should have been specifically instructed that concealment of a weapon may be innocent as opposed to culpable. The State responds that, in effect, the jury was so instructed; that, in any event, the knife in question was a deadly weapon as specifically enumerated in Neb. Rev. Stat. § 28-1202(1) (Reissue 1979); that the use or intended use of such a weapon is immaterial; and that, therefore, there could not be any innocent concealment. Section 28-1202(1) provides:

> Except as provided in subsection (2) of this section, any person who carries a weapon or weapons concealed on or about his person such as a revolver, pistol, bowie knife, dirk or knife with a dirk blade attachment, brass or iron knuckles, or any other deadly weapon, commits the offense of carrying concealed weapons.

This court discussed the per se deadly weapon question in *State v. Valencia*, 205 Neb. 719, 290 N.W.2d 181 (1980), where we held that the Legislature, by enacting § 28-1202(1), had designated certain enumerated weapons as deadly weapons per se, and the carrying of such enumerated weapons concealed on or about the person constituted a Class IV felony without any regard to the manner of the actual or intended use of the weapon;

subject, of course, to the affirmative defenses set out in § 28-1202(2). *Valencia* further held that with reference to other weapons, they could be determined to be deadly weapons only if the manner in which they were used, or intended to be used, was capable of producing death or serious bodily injury.

The State, in this case, would have us expand the list of weapons specifically enumerated in § 28-1202(1) to include all knives with a blade in excess of 3½ inches in length. The State asks us to expand the specific list of per se deadly weapons to include the table steak knife in this case by considering the definition of "deadly weapon" in Neb. Rev. Stat. § 28-109(7) (Reissue 1979), which includes the word "knife," and the definition of "knife" in Neb. Rev. Stat. § 28-1201(2) (Reissue 1979) as a "knife with a blade over three and one half inches in length." Brief for Appellee at 5.

We refuse to expand the *Valencia* holding or to construe § 28-1202(1) in that fashion. The context of Chapter 28, article 12, requires that the concept of per se deadly weapon be limited to the specific weapons enumerated in § 28-1202(1). To hold otherwise would mean that every citizen carrying a kitchen paring knife with a 4-inch blade in a picnic basket containing other appropriate picnic items would be concealing a per se deadly weapon and would be guilty of a Class IV felony without being able to explain his innocent intent. In the specific context of this case, the State would have us hold that an ordinary tool for personal dining is a per se deadly weapon. Such a result was not contemplated by the Legislature in enacting § 28-1202(1).

Section 28-1202(1), of course, must be examined to determine if the weapons in this case—the pellet gun and the steak knife—are weapons specifically enumerated in the statute. With regard to the knife, the specifically named weapons in the statute are "bowie knife, dirk or knife with a dirk blade attachment." A "bowie knife" is "a large hunting knife adapted esp. for knife-fighting . . . and having a guarded handle and a strong single-edge blade typically 10 to 15 inches long . . . ." A "dirk" is "a long straight-bladed dagger formerly carried esp. by Scottish Highlanders," or "a short sword formerly worn by British junior naval officers." Webster's Third New International Dictionary 262, 642 (1968). A "knife with a dirk blade attachment" must mean a knife with a long straight blade. The steak knife in

this case is, as a matter of law, none of those and therefore is not a deadly weapon per se.

With regard to the pellet gun it is clear that it does not fall within the weapons specifically enumerated in § 28-1202(1) as a "revolver" or "pistol." Both a revolver and pistol are firearms—a revolver being a handgun having a cylinder of several chambers that are brought successively into line with one barrel, and a pistol being a handgun whose chamber is integral with the barrel. Webster's Third New International Dictionary (1968). A "firearm" is an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded therein. Black's Law Dictionary (5th ed. 1979). A pellet gun which discharges a BB shot by means of compressed gas or a spring is not a firearm.

Having so held, we do not say that the steak knife and the pellet gun in this case could not be found to be "deadly weapons" within the meaning of § 28-1202(1). As set out in *State v. Valencia*, 205 Neb. 719, 725, 290 N.W.2d 181, 184 (1980),

> the question of whether an object or weapon not specifically mentioned in the statute is a "deadly weapon" is clearly a question of fact to be decided by the trier of fact in prosecutions under this statute, and the resolution of this question will depend upon the evidence adduced as to the use or intended use of the object in question.

For the jury to make a proper finding of fact in this regard, of course, it is necessary that the jury be properly instructed. In this case the jury was not instructed, as it should have been, that neither the knife nor the pellet gun were per se deadly weapons. Nor was the jury instructed that before Williams could be convicted of the crime charged, the jury would have to determine that one or both of the weapons was a "deadly weapon," as the court defined that term, and that the jury must also find that the defendant carried that weapon with the intention to use it to produce death or a serious bodily injury.

The court's "burden of proof" instruction, instruction No. 10, states in part that, in order to convict, the State must prove that defendant (1) "did carry a weapon concealed on or about [his] person," and (2) "did carry said weapon knowingly and intentionally." An instruction as to "knowingly and intention-

ally" carrying a weapon is not the same as "knowingly and intentionally carrying a weapon with the intention to use it to produce death or serious bodily injury." The instructions were incomplete and misleading..

The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

CAPORALE, J., participating on briefs.

KRIVOSHA, C.J., concurring in the result.

While I concur in the result reached by the majority in this case, I nevertheless believe that there is one further aspect of the case which may very well occur again on retrial, and for that reason I write separately.

In my opinion, if the evidence on the second trial concerning the steak knife is no different than it was at the first trial, it would be error for the court to submit the issue of the steak knife to the jury. The undisputed evidence at the first trial was that Williams did not own the car, did not own the knife, nor was aware that the knife was under the seat. Under such a fact situation the evidence, in my view, is insufficient to submit the issue to the jury.

Today, in *State v. Harris, post* p. 75, 77, 352 N.W.2d 581, 582-83 (1984), a case involving a minor in possession of alcohol, we said: "As a general rule, the mere presence of the minor passenger in a vehicle where alcohol is found is not sufficient by itself to convict the minor of possession. *State v. Eberhardt, supra; State v. Faircloth,* 181 Neb. 333, 148 N.W.2d 187 (1967)." I believe a similar rule should prevail with regard to a charge of being in possession of a deadly weapon.

Other jurisdictions which have addressed this question have reached similar conclusions. In the case of *Commonwealth v. Almeida,* 381 Mass. 420, 422-23, 409 N.E.2d 776, 778 (1980), the Supreme Judicial Court of Massachusetts said:

At the close of the Commonwealth's case, there was no evidence that the defendant saw the gun or knew of its presence in the automobile. . . . The jury would have had to speculate that the defendant knew the gun was in the covered console of a car he borrowed that evening, merely

from his presence in that car. We believe the evidence was insufficient "to warrant a reasonable inference of personal knowledge of the presence of the gun."

And in *State v. Krana*, 246 N.W.2d 293, 295 (Iowa 1976), the Iowa Supreme Court said: "As to the principal issue, the law of Iowa is clear that while specific intent is not an element of this crime, the accused must be aware of the presence of the gun." See, also, *Commonwealth, Appellant v. Gladden*, 226 Pa. Super. 13, 311 A.2d 711 (1973).

If there had been any evidence to create a fact question, it would have, of course, been proper for the trial court to submit that matter to the jury. But, here, the evidence did not raise a fact question. The uncontroverted evidence was that Williams did not know of the presence of the knife, that it did not belong to him, and that the car was obviously not his. There was simply no evidence from which a jury could conclude that Williams was in possession or had custody of the knife. As a matter of fact, the evidence in this case would seem to support a contrary conclusion. There is no explanation why Williams would have placed the gun, which he admittedly owned, into the glove compartment and the knife, which he did not own, under the seat. It was only by coincidence that he was even driving the vehicle at the moment they were arrested. Absent more evidence creating an issue of fact, I believe the court should not have submitted the issue of the knife to the jury.

WHITE, J., joins in this concurrence.