STATE OF NEBRASKA, APPELLANT, V. DAVID N. LEWIS, APPELLEE.
577 N.W. 2d 774

Filed April 21, 1998.   No. A-97-917.

Tricia A. Freeman, Deputy Sarpy County Attorney, for appellant.

Richard H. Hoch, of Hoch, Funke & Kelch, for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and INBODY, Judges.

INBODY, Judge.

## INTRODUCTION

The State, pursuant to Neb. Rev. Stat. § 29-2315.01 (Reissue 1995), has appealed the dismissal of the charge of carrying a concealed weapon against David N. Lewis. The charges against Lewis were dismissed when the Sarpy County Court determined that aluminum knuckles were not a deadly weapon per se under Neb. Rev. Stat. § 28-1202 (Reissue 1995) and that the State had not proved that Lewis used or intended to use the knuckles in a manner capable of producing death or serious bodily injury. This determination was affirmed by the Sarpy County District Court. The State requests that this court clarify what constitutes "brass or iron knuckles" for the purposes of § 28-1202.

## STATEMENT OF FACTS

On July 29, 1996, at approximately 8:40 a.m. at Gold Coast Road on 84th Street, in Sarpy County, Nebraska, Deputy Frank Lara stopped a blue Ford Tempo which had been traveling 51 m.p.h. in a 35-m.p.h. zone. There were two individuals in the car, the driver and a front seat passenger, who was identified as Lewis. The driver stated that he was taking Lewis to work because Lewis' driver's license was suspended.

Deputy Lara obtained consent to search the vehicle from both the driver and Lewis. While searching the vehicle, Deputy

Lara noticed a small blue and white Igloo brand six-pack cooler located on the rear floorboard. Deputy Lara searched the cooler, finding one sandwich, two cans of Mountain Dew soda, a bag of chips, and a set of metal or aluminum knuckles. Lewis claimed ownership of the cooler. The driver of the vehicle was given a speeding ticket and released. Lewis was cited for carrying a concealed weapon and was transported to the Sarpy County Jail.

On August 7, 1996, a complaint was filed charging Lewis with carrying a concealed weapon, in violation of § 28-1202(1). On April 21, 1997, a bench trial was held in the Sarpy County Court. At trial, Deputy Lara testified to the facts as previously set forth. At the close of the State's case, Lewis made a motion to dismiss, which motion was granted by the county court. The county court concluded that because aluminum knuckles are not specifically enumerated in § 28-1202, the State had to prove that the knuckles were carried for the purpose of causing death or serious bodily injury, and that the State did not do so.

On May 2, 1997, the State filed a notice of intent to appeal to the district court. On May 16, the State filed a statement of errors giving notice that the issue intended to be presented on appeal to the district court was that

> the County Court erred in its ruling that the State failed to prove a prima facie case because it failed to prove the element of intent. The State further contends it was not required to prove intent because the weapon that was the subject of the proceedings was a per se dangerous weapon as specifically enumerated in §28-1202 R.R.S. Nebraska (1943).

On July 15, the district court affirmed the decision of the county court albeit using different reasoning.

The district court looked to the general rules of statutory construction and the Nebraska Supreme Court case *State v. Williams*, 218 Neb. 57, 352 N.W.2d 576 (1984), in making its determination. The district court reasoned that because the Nebraska Supreme Court in *Williams* refused to expand the list of deadly weapons specifically enumerated to include all knives with a blade in excess of 3½ inches in length, the phrase "brass

or iron knuckles" should likewise not be expanded by applying the statutory definition for said phrase found at Neb. Rev. Stat. § 28-1201(5) (Reissue 1995). The district court stated that

> it is my opinion and conclusion the phrase "brass or iron knuckles"needs [sic] no definition. A reasonable person of common intelligence can read the language of § 28-1202(1) and understand that it is a criminal violation to carry certain concealed weapons, including brass or iron knuckles. This phrase is not ambiguous nor subject to interpretation. To substitute a contrary definition for a commonly understood term, and expect a person to guess that when the legislature used the term "brass or iron," it actually meant any hard substance is to defy reason.

On August 8, 1997, the State filed an application for leave to docket an appeal to this court, which application was sustained.

## ASSIGNMENT OF ERROR

The State's sole assigned error is that the trial court erred in granting Lewis' motion to dismiss at the close of the State's case in chief because aluminum knuckles are per se a deadly weapon under § 28-1202 as defined in § 28-1201(5).

## STANDARD OF REVIEW

■ Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Van Ackeren v. Nebraska Bd. of Parole*, 251 Neb. 477, 558 N.W.2d 48 (1997); *State v. Kennedy*, 251 Neb. 337, 557 N.W.2d 33 (1996).

## DISCUSSION

The State has filed this appeal pursuant to § 29-2315.01, seeking a ruling by this court that aluminum knuckles are per se a deadly weapon under § 28-1202. Lewis argues that because aluminum knuckles are not specifically enumerated in § 28-1202, such an item is not per se a deadly weapon. What both the State and Lewis do agree on is that this case turns upon the language contained in §§ 28-1201(5) and 28-1202 and how these two statutory sections relate to each other.

Section 28-1202(1) provides:

> Except as provided in subsection (2) of this section, any person who carries a weapon or weapons concealed on or about his or her person such as a revolver, pistol, bowie knife, dirk or knife with a dirk blade attachment, brass or iron knuckles, or any other deadly weapon commits the offense of carrying a concealed weapon.

Subsection (2) provides for affirmative defenses to the offense and is not at issue in the case at bar.

The Legislature, in enacting § 28-1202(1), designated certain weapons such as revolvers, pistols, bowie knives, dirks or knives with dirk blade attachments, and brass or iron knuckles as deadly weapons per se. See *State v. Valencia*, 205 Neb. 719, 290 N.W.2d 181 (1980). When a weapon has been classified as a deadly weapon per se for the purposes of § 28-1202, the manner of the actual or intended use of such deadly weapon is immaterial. *State v. Kanger*, 215 Neb. 128, 337 N.W.2d 422 (1983); *State v. Valencia, supra*. However, regarding the phrase "or any other deadly weapon," the Nebraska Supreme Court held that

> it is the element of actual or intended use which renders the words "other deadly weapons" sufficiently definite to provide citizens an opportunity to conform their conduct to the statute; and to distinguish between situations involving culpable concealment, and those involving innocent concealment.

*Valencia*, 205 Neb. at 724-25, 290 N.W.2d at 184.

In *State v. Williams*, 218 Neb. 57, 352 N.W.2d 576 (1984), the Nebraska Supreme Court reaffirmed the holdings in *Valencia* that § 28-1202(1) designated certain enumerated weapons deadly weapons per se, that the carrying of deadly weapons per se concealed on or about the person constituted a crime regardless of the manner of the actual or intended use of the weapon, and that items not enumerated could be determined to be deadly weapons only if the manner in which they were used, or intended to be used, was capable of producing death or serious bodily injury.

The facts of *Williams* are these: Williams and a codefendant were arrested on suspicion of driving a stolen automobile.

While searching the car for contraband, the police discovered a pellet gun, which resembled a .357 Magnum firearm, in the glove compartment and an 8½-inch-long serrated steak knife with a 4¾-inch blade beneath the driver's seat. Williams was convicted of carrying a concealed weapon, in violation of § 28-1202(1), and claimed on appeal that the trial court erred in failing to instruct the jury that the concealment of a weapon may be innocent as opposed to culpable. In response, the State argued that the list of per se deadly weapons enumerated in § 28-1202 should be expanded to include the steak knife and pellet gun. The Nebraska Supreme Court disagreed, holding that the steak knife and pellet gun were not per se deadly weapons under § 28-1202 and reversed Williams' convictions, stating:

> We refuse to expand the *Valencia* holding or to construe § 28-1202(1) in that fashion. The context of Chapter 28, article 12, requires that the concept of per se deadly weapon[s] be limited to the specific weapons enumerated in § 28-1202(1). To hold otherwise would mean that every citizen carrying a kitchen paring knife with a 4-inch blade in a picnic basket containing other appropriate picnic items would be concealing a per se deadly weapon and would be guilty of a [crime] without being able to explain his innocent intent.

*State v. Williams*, 218 Neb. at 60, 352 N.W.2d at 579.

However, there is a critical distinction between the Nebraska Supreme Court's analysis in *Williams* and the necessary analysis required for the case at bar. In *Williams*, the State argued that the definition of "knife" included in § 28-1201 should be applied in conjunction with § 28-1202 to provide that all knives with blades over 3½ inches in length were per se deadly weapons under § 28-1202. The Nebraska Supreme Court, in reading the plain language of § 28-1202, determined that prohibiting all knives was not the intent of the Legislature. In drafting § 28-1202, the Legislature specifically prohibited certain types of knives, i.e., bowie knives, dirk knives, or knives with a dirk blade attachment. Thus, even though § 28-1201 included a definition for a knife, that section contained no definition for a "bowie knife, dirk or knife with a dirk blade attachment."

Consequently, the Nebraska Supreme Court reasoned that only the specific knives listed in § 28-1202 were per se deadly weapons, and the court refused to extend § 28-1202's "per se" classification of knives to include the more general definition of knives, as defined in § 28-1201.

Likewise, in *Williams*, the court determined that a pellet gun is not per se a deadly weapon under § 28-1202. Only "revolver[s]" and "pistol[s]" were specifically prohibited by § 28-1202, and those terms were not defined within § 28-1201. Thus, the court looked to dictionaries for definitions of those terms. The court held that a pellet gun, which is a gun that discharges BB shots by means of compressed gas or a spring, was not a firearm, nor did it fall within the definition of either a revolver or a pistol. Consequently, the court determined that a pellet gun was not per se a deadly weapon under § 28-1202.

However, in the instant case, we are dealing with a different scenario. "[B]rass or iron knuckles" are considered to be per se a deadly weapon because they are specifically enumerated in § 28-1202. There is no argument from either the State or Lewis about that fact. However, unlike *Williams*, where "bowie knife, dirk or knife with a dirk blade attachment" were not specifically defined in § 28-1202, we have before us the question of how to proceed where the term "brass or iron knuckles" has been specifically defined by the Legislature in a separate statutory provision.

For guidance, we turn to the following general rules regarding statutory interpretation:

> When asked to interpret a statute, an appellate court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. A court has a duty to discover, if possible, legislative intent from the statute itself. [Citations omitted.] "When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning." [Citations omitted.] "As a series or collection of statutes pertaining to a certain subject matter, statutory

components of an act, which are in pari materia, may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible." [Citation omitted.] "[An appellate court], in construing a statute, looks to the objects to be accomplished, the evils and mischief sought to be remedied, or the purposes to be served, and places upon the statute a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. [Citation omitted.] Further, effect must be given, if possible, to all the several parts of a statute. No sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. It is not within the province of this court to read meaning into a statute that is not warranted by legislative language; neither is it within the province of the court to read anything plain, direct, and unambiguous out of a statute."

*Arizona Motor Speedway v. Hoppe,* 244 Neb. 316, 321-22, 506 N.W.2d 699, 702 (1993). Therefore, we must turn to the specific language set forth in § 28-1201.

Section 28-1201(5) defines "[k]nuckles and brass or iron knuckles" as "any instrument that consists of finger rings or guards made of a hard substance and that is designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with a fist enclosed in the knuckles." Additionally, the statute specifically provides that the terms defined in § 28-1201 are to be applicable to "sections 28-1201 to 28-1212, unless the context otherwise requires."

From our reading of the plain language of §§ 28-1201 and 28-1202, we determine that the Legislature intended that the specific definitions set forth in § 28-1201 are to be applied to "sections 28-1201 to 28-1212, unless the context otherwise requires." See § 28-1201. Section 28-1202 specifically lists "brass or iron knuckles" as per se a deadly weapon. The term "brass or iron knuckles" is specifically defined in § 28-1201(5). Pursuant to the clear statutory language of § 28-1201(5), the definition of "brass or iron knuckles" is to be applied to § 28-1202, and consequently, "any instrument that consists of finger rings or guards made of a hard substance and that is

designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with a fist enclosed in the knuckles" is per se a deadly weapon for the purpose of § 28-1202, and the State need not prove that the knuckles were used, or intended to be used, to produce death or serious bodily injury. This determination is in line with the rules of statutory interpretation requiring that a collection of statutes should be conjunctively considered and construed. We believe that this determination gives effect to the different portions of the statutory provisions and provides the most consistent and reasonable interpretation of the statutes which best serves its purpose.

Summarized, we hold that the statutory definition of "brass or iron knuckles" found at § 28-1201(5) must be read in pari materia with the provisions of § 28-1202. The county court erred in sustaining Lewis' motion to dismiss, and the district court erred in affirming the dismissal.

Having concluded that the trial court erred in sustaining Lewis' motion to dismiss at the close of the State's case in chief,' we must determine the effect of such a ruling. Pursuant to Neb. Rev. Stat. § 29-2316 (Reissue 1995), the judgment of the court in any action taken under § 29-2315.01

> shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the appellate court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state. When the decision of the appellate court establishes that the final order of the trial court was erroneous and the defendant had not been placed legally in jeopardy prior to the entry of such erroneous order, the trial court may upon application of the county attorney issue its warrant for the rearrest of the defendant and the cause against him or her shall thereupon proceed in accordance with the law as determined by the decision of the appellate court.

It is well established in Nebraska that under Neb. Const. art. I, § 12, jeopardy attaches when a judge, hearing a case without a jury, begins to hear evidence as to the defendant's guilt. *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83 (1996); *State*

*v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988). It is obvious in the instant case that the trial court, which heard the case without a jury, had begun to hear evidence as to Lewis' guilt. Obviously, Lewis had been placed in jeopardy, and therefore, our legal determination pursuant to § 29-2316 is limited to the purpose of instructing the parties as to the law for pending and subsequent cases.

## CONCLUSION

In sum, we have determined that the definition of "brass or iron knuckles" found in § 28-1201(5) applies to § 28-1202. Consequently, "any instrument that consists of finger rings or guards made of a hard substance and that is designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with a fist enclosed in the knuckles" is per se a deadly weapon under § 28-1202. See § 28-1201(5). It follows then that the manner of the actual or intended use of such "[k]nuckles and brass or iron knuckles" is immaterial. *Id.* The State's exception is sustained.

EXCEPTION SUSTAINED.