STATE OF NEBRASKA, APPELLEE, V.
GARY J. BRUNZO, APPELLANT.
634 N.W. 2d 767

Filed September 28, 2001.   No. S-00-181.

Gary J. Brunzo, pro se.

Don Stenberg, Attorney General, and Scott G. Gunem for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This matter is an appeal from an order of the district court for Douglas County denying a verified motion for postconviction relief by Gary J. Brunzo. The motion arose out of Brunzo's 1994 conviction for first degree felony murder. Brunzo alleges that constitutional errors in his 1994 trial made his conviction and sentence for first degree murder void or voidable. Brunzo previously appealed his conviction and sentence to this court. In an

opinion filed June 2, 1995, this court found Brunzo's complaints to be without merit. *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995). We now affirm the trial court's denial of Brunzo's verified motion for postconviction relief.

## BACKGROUND

The facts of this case are set out in detail in *State v. Brunzo, supra*, but are summarized as follows:

Brunzo's conviction resulted from a series of events that occurred in December 1993. Brunzo was a member of the "Lomas" street gang. Michael Campbell, a fellow Lomas member, was shot in a gang-related incident at the Crossroads Mall in Omaha. Campbell died on December 5, 1993. That evening, 40 to 50 people gathered at the home of Angelita DeLeon. Among those in attendance were Brunzo, Daniel Eona, Angel Huerta, Juan Carrera, and Doug Mantich. Carrera was a former member of the Lomas gang, and the other four were current members. Carrera testified that both Eona and Brunzo carried guns at the gathering. There was talk of retribution for Campbell's death at the gathering. In particular, there was some discussion of doing a "drive-by shooting" of a rival gang member believed to be involved in the shooting of Campbell.

At approximately 2 a.m. on December 6, 1993, two men were observed "car-jacking" a minivan in the vicinity of DeLeon's home. They drove away with the original driver still inside. A minivan soon thereafter appeared near DeLeon's home with Eona in the driver's seat and Brunzo in the passenger seat. At some point, Carrera, Huerta, and Mantich entered the minivan. Shortly after getting into the minivan, Huerta noticed the person from whom the minivan had been car-jacked, Henry Thompson, hunched over between the two front seats with his hands behind his head.

Carrera also noticed Thompson between the two front seats and saw Eona poke Thompson in the back of the head with what could have been Eona's gun. Eona continued to drive for approximately 10 minutes, when a gunshot was then fired into the back of Thompson's head. Huerta and Carrera both testified that they did not see who fired the gunshot. Huerta testified that a couple of minutes after Thompson was shot, he saw

Thompson's body fall out of the minivan from the front passenger door. Carrera testified that after the gunshot, Eona pulled the minivan over and stopped. Brunzo opened the front passenger door and pulled the body from the minivan, with a helping push from Eona, leaving the body lying in the street. Eona then drove the minivan away, whereupon Carrera said, " ' "Let me go get mine," ' " referring to his gun. Eona drove to Carrera's house, and Carrera retrieved his gun and returned to the minivan. After Carrera had climbed back into the minivan, Eona drove a " 'block or two' " and stopped. *State v. Brunzo*, 248 Neb. at 181, 532 N.W.2d at 302.

At approximately 2:44 a.m. on December 6, 1993, Carrera and Huerta shot at a house at which Nacho Palma resided. Palma was known to be a member of a rival street gang that was allegedly involved in the shooting of Campbell.

Following the driveby shooting at the Palma residence, Eona drove the minivan from the scene and a discussion ensued about putting the minivan in the river. Eona drove the minivan to the Missouri River, and he, Brunzo, Carrera, Huerta, and Mantich got out of the minivan and rolled it into the river. The group then walked away from the river through the woods. Mantich and Huerta took the guns from Carrera, Eona, and Brunzo and then walked to Huerta's house to hide them. Huerta was tired, so Mantich left Huerta's house. Meanwhile, Carrera, Eona, and Brunzo returned to where Thompson's body lay. After walking past the body, they continued to Huerta's house, where they stayed the remainder of the night. Thompson's body was found between 3 and 3:20 a.m.

Brunzo was charged by information with the first degree murder of Thompson in violation of Neb. Rev. Stat. § 28-303(1) (Reissue 1989) and "use [of] a firearm to commit a felony" in violation of Neb. Rev. Stat. § 28-1205(1) (Reissue 1989). The information, as it related to the first degree murder charge, provided in pertinent part: "[O]n or about the 6th day of December, 1993, GARY J. BRUNZO . . . did then and there purposely and with deliberate and premeditated malice, or during the perpetration of, or attempt to perpetrate a robbery or kidnapping, kill Henry Thompson." The information did not list the elements of robbery, kidnapping, or criminal attempt. Brunzo's counsel did

not move to quash the information, nor did Brunzo challenge the sufficiency of the same on appeal. During the course of the trial, the jury was repeatedly cautioned not to consider evidence of the driveby shooting at the Palma residence as it related to Brunzo.

After the parties rested their cases and during the instructions conference, Brunzo's counsel requested an instruction on proximate cause/intervening cause regarding the connection of the original robbery to the shooting of Thompson. The trial court denied that request. Brunzo's counsel did not assign that decision as error or argue the same on appeal. Among the jury instructions given, however, was instruction No. 11, which dealt with the intent required for felony murder. It stated:

> You are instructed that in a prosecution for homicide in the perpetration of or attempt to perpetrate a robbery or kidnapping, as herein charged, proof is not required of premeditation and deliberation or a purpose to kill.

> The turpitude involved in the robbery or kidnapping takes the place of intent to kill or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intention required for robbery or kidnapping.

> A homicide committed while perpetrating or attempting to perpetrate a robbery or kidnapping is Murder in the First Degree, even though no intent to commit homicide is alleged or proven.

Brunzo's counsel did not object to that instruction, nor did Brunzo assign as error or argue on direct appeal the giving of this instruction.

Following a jury trial, Brunzo was found guilty of first degree murder under a felony murder theory and was sentenced to a term of life imprisonment. The charge of "use [of] a firearm to commit a felony" was dismissed by the trial court. Brunzo appealed his conviction, and this court affirmed. *State v. Brunzo*, 248 Neb. 176, 532 N.W.2d 296 (1995).

Brunzo filed a verified motion for postconviction relief in the district court for Douglas County. The trial court overruled Brunzo's motion in its entirety. Brunzo appealed that ruling to this court. The State moved for summary affirmance, which this court denied.

## ASSIGNMENTS OF ERROR

Brunzo, in the appeal of the trial court's order denying his verified motion for postconviction relief, assigns that the trial court erred in (1) not finding that the information in this case was facially defective, (2) finding that the jury was properly instructed, (3) finding that there were no lesser-included offenses to the offense of murder in the first degree, (4) not finding that Brunzo was denied effective assistance of counsel during trial and sentencing, and (5) not finding that Brunzo was denied effective assistance of counsel on direct appeal.

## STANDARD OF REVIEW

A criminal defendant seeking postconviction relief has the burden of establishing a basis for such relief, and the findings of the district court will not be disturbed unless clearly erroneous. *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997); *State v. Massey*, 252 Neb. 426, 562 N.W.2d 542 (1997).

The appellant in a postconviction proceeding has the burden of alleging and proving that the claimed error is prejudicial. *State v. Caddy, ante* p. 38, 628 N.W.2d 251 (2001); *State v. Hess*, 261 Neb. 368, 622 N.W.2d 891 (2001); *State v. Boppre, supra.*

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Caddy, supra*; *State v. Soukharith*, 260 Neb. 478, 618 N.W.2d 409 (2000); *State v. Suggs*, 259 Neb. 733, 613 N.W.2d 8 (2000).

## ANALYSIS

Brunzo's first three assignments of error are procedurally barred as a matter of law. A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal. *State v. Suggs, supra.* All three of these assignments of error are of the type that could have been raised on direct appeal. Since they were not raised at that time, we determine that Brunzo is barred from raising the issues now. See *id.* See, also, *State v. Palmer*, 257 Neb. 702, 600 N.W.2d 756 (1999).

In his fourth and fifth assignments of error, Brunzo argues that the trial court erred by not finding he was denied effective

assistance of counsel during his trial, sentencing, and appeal. Specifically, Brunzo argues that (1) the information charging him was defective, and counsel was ineffective for failing to move that the information be quashed and for failing to assign as error and argue its defectiveness on appeal; (2) jury instruction No. 11 was unconstitutional, and counsel was prejudicially ineffective for failing to object to it at trial and for failing to assign as error and argue its unconstitutionality on appeal; (3) his trial counsel was prejudicially ineffective for failing to tender a jury instruction on lesser-included offenses to first degree felony murder and to the applicable predicate felonies listed in the statute; (4) his counsel on direct appeal was prejudicially ineffective for failing to assign and argue as error the trial court's refusal to charge the jury with a proximate/intervening cause instruction; and (5) his counsel on direct appeal was prejudicially ineffective for failing to cite constitutional bases for the issues raised on direct appeal.

In order to establish whether a defendant was denied effective assistance of counsel, he or she must ordinarily demonstrate that counsel was deficient; that is, counsel did not perform at least as well as a criminal lawyer with ordinary training and skill in the area. Moreover, the defendant must make a showing that he or she was prejudiced by the actions or inactions of his or her counsel; that is, the defendant must demonstrate with reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Tucker*, 257 Neb. 496, 598 N.W.2d 742 (1999).

In this case, before Brunzo can argue that his counsel was prejudicially ineffective, he must demonstrate the validity of his underlying claim. He must first demonstrate that the information charging him in this case was legally insufficient.

The function of an information is twofold. With reasonable certainty, an information must inform the accused of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense. *State v. Spiegel*, 239 Neb. 233, 474 N.W.2d 873 (1991); *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989).

█ Generally, to charge a defendant with the commission of a criminal offense, the information or complaint must allege each statutorily essential element of the crime charged, expressed in the words of the statute which prohibits the conduct charged as a crime, or in language equivalent to the statutory terms defining the crime charged. *State v. Willett*, 233 Neb. 243, 444 N.W.2d 672 (1989). Where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the charge is sufficient. *State v. Bowen*, 244 Neb. 204, 505 N.W.2d 682 (1993).

█ However, when the charging of a crime in the language of the statute leaves the information insufficient to reasonably inform the defendant as to the nature of the crime charged, additional averments must be included to meet the requirements of due process. *Jungclaus v. State*, 170 Neb. 704, 104 N.W.2d 327 (1960). Nonetheless, an information is deemed sufficient unless it is so defective that by no construction can it be said to charge the offense of which the accused was convicted. *State v. Bowen, supra.*

The question presented is therefore whether an information which charges a defendant with felony murder must list the elements of the predicate felonies.

We previously touched upon this question in *State v. Palmer*, 257 Neb. 702, 600 N.W.2d 756 (1999). In that case, Palmer argued that the information charging him with felony murder was defective because it did not list the elements of the underlying felony, robbery. Palmer argued that counsel was therefore ineffective for failing to argue the defectiveness of the information by a plea of abatement. *Id.* This court did not agree. The information filed against Palmer stated that " 'Palmer . . . in the perpetration of a robbery of Eugene William Zimmerman, did kill Eugene William Zimmerman.' " *Id.* at 724, 600 N.W.2d at 774. We held that since the allegation was nearly a verbatim recitation of the language of § 28-303, which states that "[a] person commits murder in the first degree if he kills another person . . . (2) in the perpetration of or attempt to perpetrate any . . . robbery [or] kidnapping," it was sufficient to charge and convict Palmer. *State v. Palmer, supra.*

The information instructed Palmer that the underlying felony which would be alleged at trial was robbery. *Id.* We found that the charge in the information was a fair means of informing Palmer of what he would have to defend against. Therefore, Palmer's assignment of error based on this issue was without merit. *Id.*

The information charging Brunzo was likewise a nearly verbatim recitation of the language of § 28-303. It also instructed Brunzo as to what the underlying felonies were: robbery, kidnapping, and/or criminal attempt. Under our reasoning in *Palmer*, the information would be sufficient to charge and convict Brunzo, and the charge contained in it was a fair means of informing Brunzo of what he would have to defend against.

Based on our previous decision in *State v. Palmer, supra,* we conclude that it is not necessary for the elements of the underlying or predicate felony to be set out in the information. Brunzo was not charged with the underlying crimes of robbery, kidnapping, and/or criminal attempt, and the intent to commit the underlying crime does serve as a substitute for the intent to kill. See *State v. Price,* 252 Neb. 365, 562 N.W.2d 340 (1997). Furthermore, the information charging Brunzo with felony murder did give him fair notice of the charges he would face and the crime he was later convicted of.

Brunzo's argument is thus without merit. Because the information was valid, Brunzo's counsel was not ineffective for failing to move that it be quashed at trial or for not assigning as error and arguing on appeal its invalidity. Accordingly, there is no need to discuss whether Brunzo was actually prejudiced by his counsel's actions or inactions. We have considered all other assignments of error, including those based upon associated federal law, and conclude that these are without merit.

## CONCLUSION

Having found that the information charging Brunzo was not defective and that Brunzo's other assignments of error are either procedurally barred or without merit, we accordingly affirm the trial court's order denying postconviction relief to Brunzo.

AFFIRMED.