STATE OF NEBRASKA, APPELLEE, V.
KENNETH JOHNSON, APPELLANT.

670 N.W.2d 802

Filed November 4, 2003.    No. A-02-1503.

Brett McArthur for appellant.

Jon Bruning, Attorney General, and Susan J. Gustafson for appellee.

IRWIN, Chief Judge, and SIEVERS and MOORE, Judges.

SIEVERS, Judge.

Kenneth Johnson was tried in the district court for Lancaster County for first degree sexual assault on a child and incest, based on acts allegedly committed against his stepdaughter. He was acquitted of the first degree sexual assault charge but convicted of incest. Johnson appeals several issues concerning the correct definition of "minor" in a charge of incest for acts committed against a stepchild.

## I. FACTUAL BACKGROUND

Johnson and his wife were married in 1991. At the time of the marriage, Johnson's wife had four children from previous relationships all of whom lived with the couple. Johnson had five children, two of whom lived periodically with the couple. At the time of the marriage, C.K., one of Johnson's wife's children, was around 10 years old.

According to Johnson's admissions to the police, when C.K. was around the age of 17, Johnson and C.K. had sexual contact,

and they had sexual intercourse when C.K. was 18 years old. C.K. testified that the contact started at age 12 and that intercourse started a year later and continued until she contacted the police. Given the acquittal on the first degree sexual assault charge and the assignments of error Johnson advances, further factual details are unnecessary.

## II. PROCEDURAL BACKGROUND

On November 30, 2001, Johnson was charged in the Lancaster County District Court with first degree sexual assault on a child (count I), in violation of Neb. Rev. Stat. § 28-319 (Reissue 1995), and incest (count II), in violation of Neb. Rev. Stat. § 28-703(1) (Reissue 1995). Thereafter, Johnson filed a motion to suppress statements he had made to officers of the Lincoln Police Department on or about October 3 or 4, 2001, which motion alleged that his Fifth Amendment rights were violated. Following a hearing, the district court denied the motion to suppress the videotape of the interview at the police department; however, the court sustained the motion to suppress the transcription of the videotape, since the transcription was not accurate.

Johnson then filed a motion in limine asking the district court to exclude the evidence of his statement made to police officers on October 4, 2001. Specifically, Johnson objected to any statement he made regarding sexual contact with the alleged victim when she was 16 years or older. At the hearing, Johnson argued that any sexual contact with the alleged victim when she was above the age of consent would not constitute incest and that the statement would be unfairly prejudicial. The district court rejected this argument and entered an order overruling the motion in limine.

The case proceeded to a jury trial about a month later. On the second day of trial, following the State's rest after its case in chief, Johnson moved for a directed verdict for the reason that the State had failed to make a prima facie showing of all the elements of its case. At that time, Johnson also raised the issue as to the lack of the word "minor" in count II of the information. Johnson argued that because of the lack of the word "minor," there was an insufficient allegation of a crime, and that the charge should therefore be dismissed. The State asked for leave

to amend the information at that time. The district court then overruled all motions by both parties.

Later that day, prior to the afternoon trial session, there was apparently an off-the-record conversation with counsel regarding Johnson's motion on count II of the information. The trial judge stated on the record that the parties had agreed to continue with the evidentiary aspects and allow counsel the evening to research the issues. The record is somewhat unclear, but it seems that Johnson's motion for a directed verdict, made after the State's case in chief, was deemed unresolved, even though Johnson had proceeded with evidence. At the end of the second day, the defense rested and subsequently renewed its motion for a directed verdict for the same reasons as before. The jury was dismissed, and instructions were to be read on the third day.

On the third day of the trial, the district court received briefing from counsel regarding count II. Again, the State's counsel requested leave to amend the information to add the word "minor." The court heard arguments from both sides and consequently ruled that the State should have the right to amend by interlineation. Thus, following the amendment to the information, the district court overruled both of Johnson's motions for a directed verdict. The court also ruled that Johnson was not entitled to 24 hours' notice of the new information or to a new preliminary hearing. Johnson then moved for a new arraignment on the new information or, in the alternative, that he be allowed to withdraw his plea of not guilty so he could stand mute and file a motion to quash. The district court overruled that motion as well. Johnson also moved for a mistrial, which motion was overruled.

The district court then read the instructions. Johnson had previously objected to jury instruction No. 4. The court overruled the objection and denied Johnson's proposed jury instruction No. 4. The jury found Johnson not guilty of first degree sexual assault, but found him guilty of incest. This appeal followed.

### III. ASSIGNMENTS OF ERROR

Johnson asserts that the district court erred in (1) overruling Johnson's motion for directed verdict for the reason that the State failed to make a prima facie showing of all the elements of its case and because the statute upon which the charge was based is

unconstitutionally vague, (2) allowing the State to amend the information, (3) overruling Johnson's motion for mistrial, (4) refusing to grant Johnson an arraignment and an opportunity to file a motion to quash, (5) overruling Johnson's objection to jury instruction No. 4, and (6) refusing to give Johnson's proposed jury instruction.

## IV. STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Segura*, 265 Neb. 903, 660 N.W.2d 512 (2003).

The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Haltom*, 264 Neb. 976, 653 N.W.2d 232 (2002).

Regarding questions of law presented by a motion to quash, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court. *State v. Brouillette*, 265 Neb. 214, 655 N.W.2d 876 (2003).

Whether jury instructions given by a trial court are correct is a question of law. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). In an appeal based on the claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Brown*, 258 Neb. 346, 603 N.W.2d 456 (1999).

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the

tendered instruction. *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002).

## V. ANALYSIS

### 1. MOTION FOR DIRECTED VERDICT AND ALLEGED UNCONSTITUTIONALITY OF § 28-703

The crux of Johnson's appeal is based upon count II of the original information, which did not allege that Johnson's step-daughter was a "minor." Johnson alleges that the district court should have granted his motion for a directed verdict because without the word "minor," count II did not amount to a crime. The incest statute, § 28-703, provides that "any person who engages in sexual penetration with his or her minor stepchild commits incest," a Class III felony, but the statute does not define "minor." However, this argument largely evaporates if the court did not err in allowing the amendment, and as discussed later, we find no error in the amendment.

■ If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *State v. Segura, supra.* After the court allowed the State to add by interlineation to the information the word "minor," thereby alleging that C.K. was a minor, the motion for a directed verdict was overruled. The district court found that the State had presented sufficient evidence to sustain a conclusion that Johnson had committed incest with his stepdaughter, which finding is obviously correct given that C.K. testified to penetration at age 13. Johnson does not contend that a 13-year-old child is not a minor. Thus, while the trial judge, relying upon Neb. Rev. Stat. § 43-2101 (Reissue 1998), ruled that a minor stepchild for purposes of the incest statute is a person under the age of 19, we need not yet decide the age of minority to find that the motion for a directed verdict was properly overruled, since a 13-year-old child is a minor by any statute or definition.

■ Also presented in Johnson's first assignment of error is the question whether § 28-703 is unconstitutionally vague in its use of the term "minor." This court cannot determine the constitutionality of a statute, yet when necessary to a decision in the case before us, we do have jurisdiction to determine whether a

constitutional question has been properly raised. *Harvey v. Harvey*, 6 Neb. App. 524, 575 N.W.2d 167 (1998). See *Bartunek v. Geo. A. Hormel & Co.*, 2 Neb. App. 598, 513 N.W.2d 545 (1994). It has been established that the Nebraska Supreme Court insists upon strict compliance with Neb. Ct. R. of Prac. 9E (rev. 2000) before it will consider a constitutional challenge. See *Harvey v. Harvey, supra.* See, also, *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996); *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994). Johnson did not comply with rule 9E, which requires that when filing a brief, a party alleging unconstitutionality of a federal or state statute must file and serve a separate written notice of the challenge to the statute with the Clerk of the Supreme Court. Additionally, the Attorney General must be served a copy of the brief assigning unconstitutionality within 5 days of the filing of the brief with the Clerk of the Supreme Court. Johnson did not comply with either of these requirements of rule 9E. Therefore, the claim of the unconstitutionality of § 28-703 has not been properly preserved for appellate review.

### 2. AMENDMENT TO INFORMATION

■ Johnson alleges it was error to allow the State to amend the information to include the word "minor" as a descriptor for the victim. A district court, in its discretion, may permit a criminal information to be amended at any time before verdict or findings if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. *State v. Aldrich*, 226 Neb. 645, 413 N.W.2d 639 (1987).

■ The function of an information is twofold. With reasonable certainty, an information must inform the accused of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense. *State v. Brunzo*, 262 Neb. 598, 634 N.W.2d 767 (2001). Generally, to charge a defendant with the commission of a criminal offense, the information or complaint must allege each statutorily essential element of the crime charged, expressed in the words of the statute which prohibits the conduct charged as a crime, or in language equivalent to the statutory terms defining the crime charged. *Id.* However, when the charging of a crime in

the language of the statute leaves the information insufficient to reasonably inform the defendant as to the nature of the crime charged, additional averments must be included to meet the requirements of due process. *Id.* Nonetheless, an information is deemed sufficient unless it is so defective that by no construction can it be said to charge the offense of which the accused was convicted. *Id.* In short, the test is whether the information charges the defendant with the statutory elements and informs the defendant of the charges.

In *State v. Gascoigen*, 191 Neb. 15, 213 N.W.2d 452 (1973), the Supreme Court found that amending the information to add the word "willfully" was not error. The criminal statute involved in *Gascoigen* made it a crime if there was a willful failure of a person to return to custody. After the jury was impaneled but before any evidence was introduced, the State, during a recess which was apparently ex parte, requested and was granted leave to amend the information by adding the term "willfully." Counsel for the defendant did not discover the amendment until the jury instruction conference. The Supreme Court found that adding "willfully" to the information did not prejudice the substantial rights of the defendant. Further, the court acknowledged that the amendment did not alter the burden of the State to prove beyond a reasonable doubt every essential element of the offense with which the defendant was charged. The court stated: "To treat the addition of the single word 'willful' as a substantive and critical amendment in this case exalts form over substance." *Id.* at 19-20, 213 N.W.2d at 455.

Similarly, in *State v. Last*, 212 Neb. 596, 324 N.W.2d 402 (1982), on the third day of trial, the State moved to amend the information to add the words "with intent to steal" to an information charging attempted robbery. The defendant alleged that it was error to allow the State to amend the information and that the original information should have been quashed, since it failed to include an essential element of the crime charged. The Supreme Court held that since the information specifically charged the defendant with the crime of attempted robbery, the information of necessity included all the elements of the crime of robbery. The court said that the use of the word "robbery" by definition includes the element "with intent to steal." Further, by

charging the defendant with attempted robbery, the State was obligated to prove all the necessary elements of robbery, including an intent to steal. The Supreme Court held that adding the words "with intent to steal" did not change the offense from that with which the defendant had been charged.

In the case at bar, the State was obligated to prove all the elements of incest, including that the stepchild was a minor. The original information was sufficient to reasonably inform Johnson as to the nature of the crime charged, because it specifically charged him with engaging in sexual penetration "with his stepdaughter, to-wit: [C.K.]" Johnson knew that the victim had to be a minor because nearly a month before trial, he filed a motion in limine arguing about the definition of the term "minor" and seeking to block the admission of any statements he had made regarding incidents that occurred after the victim turned 16 years old. Johnson was not misled, surprised, or prejudiced in his preparation for trial; nor was he unable to prepare his defense due to the omission, as he clearly knew that at issue was whether C.K. was a minor at the time of the incidents. Indeed, unlike the defendant in *State v. Gascoigen*, 191 Neb. 15, 213 N.W.2d 452 (1973), Johnson was informed of the amendment, and obviously, no additional preparation time was required by the amendment.

Furthermore, adding the word "minor" did not alter the incest charge in any way. The amendment did not charge an additional offense and did not change the nature of the original incest charge. The amendment here was no different than the addition of the term "willfully" in *Gascoigen* or the words "intent to steal" in *Last,* because being a minor is, of necessity, part of the crime of incest when the victim is a stepchild of the defendant, as was alleged in the original information. Johnson's rights were clearly not prejudiced. He was sufficiently apprised of the charges against him and of all the elements necessary to prove the charges, including all of those inherent in the crime of incest, specifically that a stepchild victim be a minor. Thus, the district court did not err in allowing the State to amend the information to include the word "minor."

### 3. Motion for Mistrial

Johnson alleges in his third assignment of error that the trial court abused its discretion in overruling his motion for a

mistrial because the court allowed the amendment which resulted in fundamental unfairness to him. The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Shipps*, 265 Neb. 342, 656 N.W.2d 622 (2003). Having found that it was not error to allow the amendment, we obviously must also find that the denial of the motion for a mistrial was properly overruled.

### 4. Denial of Arraignment and Motion to Quash

Johnson contends that the trial court erred in refusing to grant a new arraignment and allow him to file a motion to quash after the information had been amended. Johnson claims that the addition of the word "minor" to the information alters the nature of the charge and that as a result, he should have been entitled to arraignment. Neb. Rev. Stat. § 29-1816 (Reissue 1995) states in part:

> The accused shall be arraigned by reading to him or her the indictment or information, unless the reading is waived by the accused when the nature of the charge is made known to him or her. The accused shall then be asked whether he or she is guilty or not guilty of the offense charged. If the accused appears in person and by counsel and goes to trial before a jury regularly impaneled and sworn, he or she shall be deemed to have waived arraignment and a plea of not guilty shall be deemed to have been made.

As said, the amendment to the information did not alter the charge, nor did it prejudice Johnson's rights. Johnson was aware of the charges, and he was aware that the allegations in the information pertained to sexual penetration with C.K., whose age Johnson would have likely known at the time of the alleged incidents. Johnson was aware, as shown by his own pretrial motions, that at issue was whether C.K. was a minor at the time of the incidents. The denial of a new arraignment after the amendment in no way prejudiced Johnson, because Johnson was arraigned on the original information and because the amendment contained no new information.

As to the motion to quash, when Johnson moved for arraignment on the new information, he moved in the alternative to be

allowed to withdraw his not guilty plea in order to stand mute and file a motion to quash the information on the ground that it was unconstitutionally vague. The district court denied this alternative motion. Johnson contends this was error in that he never had an opportunity to stand mute or file a motion to quash on the precise information upon which he was convicted. Further, Johnson did not move to quash the original information, despite his knowledge that the statute referred to "minor stepchild" and the apparent dispute concerning the definition of the word minor which existed well before the trial and amendment to the information. Denial of the opportunity to file a motion to quash could only be prejudiced if such had merit, and in this case, that would mean the statute under which he was charged needs to be found unconstitutional. We have already determined that the constitutionality of the statute was not preserved for appellate review.

### 5. OBJECTION TO JURY INSTRUCTION NO. 4 AND REFUSAL TO GIVE PROPOSED JURY INSTRUCTION

Johnson contends that it was error to give jury instruction No. 4 and that it was error to refuse to give his proposed jury instruction regarding the elements of the State's case for count II, incest. The district court instructed that the State must prove that the victim was less than 19 years old at the time of the offense. Johnson requested the court to instruct the jury that the victim had to be either less than 16 years old or less than 18 years old. In order to establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden, among other things, to show that the tendered instruction is a correct statement of the law. See *State v. Bao*, 263 Neb. 439, 640 N.W.2d 405 (2002). Section 43-2101, the statute used by the trial judge, says that "[a]ll persons under nineteen years of age" are minors, unless a person under the age of 19 marries, then his or her minority ends. This takes us to the core issue: What is the meaning of "minor" in the incest statute, § 28-703, given that the statute does not provide a particular age.

The age of majority is set at different ages for different purposes. See, e.g., Neb. Rev. Stat. § 25-508.01 (Reissue 1995) (for purposes of personal service, minor is person under 14

years of age); Neb. Rev. Stat. § 28-443 (Reissue 1995) (in regard to prohibition of delivery of drug paraphernalia to minor, minor is person under 18 years of age who is at least 3 years younger than actor); Neb. Rev. Stat. § 28-805 (Reissue 1995) (debauching minor prohibits nonminor from debauching morals of boy or girl under age of 17); Neb. Rev. Stat. § 28-1418 (Reissue 1995) (prohibiting use of tobacco by minor under age of 18); Neb. Rev. Stat. § 53-103(23) (Cum. Supp. 2002) (for purposes of Nebraska Liquor Control Act, minor means any person under 21 years of age, regardless of marital status). We must determine whether § 43-2101 provides the correct definition of the term "minor." In the construction of statutes, we look to the following guidelines:

"When asked to interpret a statute, an appellate court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. A court has a duty to discover, if possible, legislative intent from the statute itself. [Citations omitted.] 'When statutory language is plain and unambiguous, no judicial interpretation is needed to ascertain the statute's meaning so that, in the absence of a statutory indication to the contrary, words in a statute will be given their ordinary meaning.' [Citations omitted.] 'As a series or collection of statutes pertaining to a certain subject matter, statutory components of an act, which are in pari materia, may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible.' [Citation omitted.] '[An appellate court], in construing a statute, looks to the objects to be accomplished, the evils and mischief sought to be remedied, or the purposes to be served, and places upon the statute a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. [Citation omitted.] Further, effect must be given, if possible, to all the several parts of a statute. No sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. It is not within the province of this court to read meaning into a statute that is not warranted by legislative language; neither is it within

the province of the court to read anything plain, direct, and unambiguous out of a statute.' "

*State v. Lewis*, 6 Neb. App. 867, 874-75, 577 N.W.2d 774, 779-80 (1998), quoting *Arizona Motor Speedway v. Hoppe*, 244 Neb. 316, 506 N.W.2d 699 (1993). The intent of the Legislature is expressed by omission as well as by inclusion. *Nelsen v. Grzywa*, 9 Neb. App. 702, 618 N.W.2d 472 (2000).

Use of § 43-2101 to define "minor" for purposes of the incest statute, § 28-703, is appropriate because the incest statute is obviously intended to protect the familial structure of both blood relatives and stepfamilies. Minor stepchildren are included in the incest statute because a stepparent and a minor stepchild can have the same relationship as a natural parent has with a natural child. Even if the relationship is not the same, the stepparent is still in a position of power, authority, and dominance vis-a-vis the stepchild.

For parents and natural children, there is no age at which sexual relations become lawful. See § 28-703. In short, the law does not permit consent to such a relationship. However, for the crime of incest in a stepfamily, the stepchild must be a minor, meaning that an adult stepchild can consent to such a relationship. The Legislature apparently recognized that the makeup of a stepfamily may eventually change once a child becomes an adult and that a sexual relationship between an adult stepchild and a stepparent could occur, because it does not have the inherent criminality, danger to offspring, and destructiveness to the entire family that arises when sex occurs between parent and child. It is evident that the Legislature saw incest as a very serious crime and wanted to provide as much protection as possible for stepchildren and their families without denying the fact that the status of stepfamilies may change. While the Legislature did not define "minor" within the incest statute, it is reasonable to assume a legislative intent to provide the maximum degree of protection for stepchildren and their families while recognizing the difference between stepchildren and natural children and to construe the statute accordingly. For a sexual relationship between the latter to truly be consensual, the stepchild, of necessity, must be an adult. Thus, we reject the use of younger ages for minor children as found in other statutes we have listed and hold that for the crime

of incest, any stepchild under the age of 19 is a minor. Thus, we hold that § 43-2101 defines "minor" as a person under 19 years of age for purposes of the incest statute, § 28-703.

Further support for § 43-2101 being applicable to the incest statute is found in its location in the statutes. Even though § 43-2101 is not contained in the criminal code, it is in the chapter entitled "Infants and Juveniles," and it is well known that the juvenile code has as its overriding concern the child's best interests. That chapter also provides the definition of stepparent that is applicable to the incest statute. See Judiciary Committee Hearing, L.B. 89, 89th Leg., 1st Sess. 43 (Jan. 30, 1985). It is appropriate for the term "minor" to be defined as under the age of 19 for purposes of the incest statute, as it is in the child's best interests to be protected from incest by a stepparent until adulthood.

Additionally, the Nebraska Supreme Court has not specifically defined the term "minor" in regard to other incest cases, but the court has affirmed prior incest convictions in cases where the victim was over 16 years old. See *State v. Perdue*, 222 Neb. 679, 386 N.W.2d 14 (1986) (victim was assaulted between 14 and 18 years of age). Therefore, the district court was correct in utilizing § 43-2101 and in determining the age of a minor stepchild for purposes of the incest statute to be under the age of 19. As a result, Johnson cannot premise error on the failure to give an instruction that would contain an incorrect statement of the law.

## VI. CONCLUSION

For the foregoing reasons, we affirm the conviction of Johnson on the charge of incest, holding that for purposes of the incest statute, a minor stepchild means a child under the age of 19.

AFFIRMED.