IN RE INTEREST OF CRYSTAL T. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. JOHN T. AND AMY T.,
APPELLEES, AND NEBRASKA DEPARTMENT OF HEALTH AND
HUMAN SERVICES, APPELLANT.

586 N.W. 2d 479

Filed November 24, 1998.    Nos. A-97-1228, A-97-1229, A-97-1230.

Don Stenberg, Attorney General, Royce N. Harper, and Beth Tallon, Special Assistant Attorney General, for appellant.

No appearance for appellees.

HANNON and MUES, Judges, and NORTON, District Judge, Retired.

HANNON, Judge.

The Department of Health and Human Services (Department) appeals a dispositional order entered by the county court sitting as a juvenile court in separate proceedings involving three juveniles from the same family, Crystal T., Dexter T., and Jessica T. After adjudication, the care and custody of the children was awarded to the Department. The court approved the initial case plan, which provided for custody of the children to be in the Department with the children's being placed in the home of their mother, Amy T. At a review hearing on October 31, 1997, the juvenile court approved a case plan submitted by the Department, which plan provided, in part, for the children to continue to live in Amy's home, with the eventual permanent return of the children to Amy's home as a goal. In an order approving the plan, the court provided, "The Department . . . shall conduct 10 to 12 visits prior to the next court review between the hours of 9:00 P.M. and 6:00 A.M. without warn-

ing." The Department appeals from that order, objecting to the quoted phrase and arguing that the statutes do not authorize such an order and that they are unconstitutional if they do. We conclude that the order is justified by the statutes and that this court does not have jurisdiction to consider the possible unconstitutionality of the statutes. We therefore affirm the juvenile court's order.

## BACKGROUND

The children, ages 15, 10, and 9 years at the time of the hearing, had been adjudicated as juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) on or before November 27, 1996. The children's mother, Amy, was incarcerated at the time, and the children were left in the care of Amy's boyfriend, who abused them. The children had been removed from the home and later allowed to return under the Department's supervision.

The record of the October 31, 1997, hearing consists of the testimony of Shirl Cadek, the Department case manager for the children, and Mary Casper, the children's guardian ad litem, and the following documents: an October 19 probation officer's report; the "Case Plan and Court Report" dated October 24, 1997; and a report of the guardian ad litem, including a letter from a third party.

The documents indicate that Crystal had been placed on intensive supervision probation with electronic monitoring on September 8, 1997. The probation officer's report states that Amy had enabled Crystal to violate the policies of the electronic monitoring system. Incidents occurred where the electronic monitoring of Crystal failed because a household member reportedly had accidentally caused the telephone to be "off-the-hook." Also, as a condition of her probation, Crystal was not allowed to have visitors at home unless they were first cleared through the probation office. However, Amy simply told the probation office that anyone coming to the house was her friend, not Crystal's, even when the visitors were in their midteens.

Cadek suspected, but could not verify, that there were males living at Amy's home. Cadek stated that on some of her visits, people were at the home but left upon her arrival. The record contains a letter, dated October 22, 1997, from the mother of a

young male who was a frequent visitor at Amy's home. The letter stated that there were several men living at Amy's home, including Crystal's boyfriend.

There was evidence that Dexter was also experiencing some difficulties in school and that homework sent home for Amy's signature had been signed by Crystal. Cadek testified that Amy had been under court order to submit to an alcohol evaluation, but had not yet done so. Despite the numerous difficulties in dealing with Amy, Cadek believed that the children should remain with Amy under the Department's supervision.

The case plan states many positive things about Amy and her effort to change. It also states that there have been concerns regarding males' being present in the home, that on two occasions males were present and left upon the arrival of the caseworker, and that on one occasion, at 8:30 a.m. a male answered the phone and said Amy was gone and that "the children had gotten themselves up for school and left already." The case manager indicated concern regarding who might be in Amy's home at different times. The case plan indicates that both announced and unannounced visits had been made.

The guardian ad litem report states one concern to be that "[n]on-family members were living in the [family] home during the summer," and the guardian ad litem stated that during visits, the children met her outside and told her they were instructed to let no one in the house.

The document indicates that visitors to the home, primarily young males, have not been a good influence in the home and that Amy might not have been home at times when she would be expected to be home with the children. The record would justify the trial court's concluding that unannounced visits during the night might be desirable as a means of assuring the desired results or at least to learn of Amy's failures. The court ordered: "The mother shall be required to open the door and allow into her home Health and Human Service workers at any time of the day or night and shall be subject to spot checks from time to time." The Department was ordered to conduct 10 to 12 visits without warning, between the hours of 9 p.m. and 6 a.m., prior to the next court review. The court also approved the case plan and ordered a review hearing for January 22, 1998.

## ASSIGNMENT OF ERROR

The Department argues that the juvenile court erred in deciding that it had jurisdiction to order the Department to make "spot checks" without warning between 9 p.m. and 6 a.m. and to make 10 to 12 such visits prior to the next court review.

## STANDARD OF REVIEW

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach independent conclusions, irrespective of the determination made by the court below. *In re Interest of Gloria F.*, 254 Neb. 531, 577 N.W.2d 296 (1998).

## ANALYSIS

*Jurisdiction.*

An appellate court has the power and duty to determine whether it has jurisdiction over the matter before it. *In re Interest of Joelyann H.*, 6 Neb. App. 472, 574 N.W.2d 185 (1998). The juvenile court, although stating in its order that it approved the Department's case plan, effectively modified the plan when it imposed the additional requirements now complained of by the Department. Neb. Rev. Stat. § 43-287.03 (Cum. Supp. 1996) provides for the review of contested dispositional plans by a juvenile review panel

> when the court makes an order directing the implementation of a plan different from the plan prepared by the [Department] concerning the care, placement, or services to be provided to the juvenile and the department or any other party believes that the court's order is not in the best interests of the juvenile.

Such review must be sought from the review panel within 10 days after disposition by the court. Neb. Rev. Stat. § 43-287.04 (Cum. Supp. 1996). The proper and exclusive forum for review of a juvenile court's deviation from a case plan recommended by the Department is a juvenile review panel, and a failure to timely seek such review renders this court without jurisdiction to hear an appeal in the case. See *In re Interest of Laura O. & Joshua O.*, 6 Neb. App. 554, 574 N.W.2d 776 (1998). At first blush, we are concerned about this court's jurisdiction because the appeal was perfected directly to this court.

■ However, the Nebraska Supreme Court has held that a party is entitled to expedited review by the juvenile review panel if two requirements are met: "First, the order must implement a different plan than that proposed by the department. Second, there must exist a belief in the department that the court-ordered plan is not in the best interests of the juvenile." *In re Interest of M.J.B.*, 242 Neb. 671, 674, 496 N.W.2d 495, 498 (1993).

In this case, the Department has not alleged that such additional requirements are not in the juveniles' best interests; rather, it argues the requirements appealed from represent an attempt by the juvenile court to improperly "micromanage" the Department. Consequently, the second prong of the test was not met. We therefore conclude that the provisions for expedited review by a juvenile review panel were not triggered and that this court has jurisdiction to hear the Department's appeal.

*Validity of Court's Order.*
■ The Department argues that the complained of order seeks to manage the Department's custody of the children. It bases its position on two grounds: one, that the statutes correctly interpreted do not give the juvenile court the authority to enter the order directing it, and two, that if the statutes do so, they are unconstitutional because they are in violation of the separation of powers provisions, Neb. Const. art. II, § 1. This court has no jurisdiction to consider the constitutionality of statutes, as that function is reserved to the Nebraska Supreme Court. Neb. Const. art. V, § 2. We will therefore assume all statutes examined are constitutional without considering their constitutionality.

Neb. Rev. Stat. § 43-284 (Supp. 1997) provides that the juvenile court may permit a juvenile adjudged to be under § 43-247(3) to remain in his or her own home subject to supervision or may make an order committing the juvenile to the care of some suitable institution, reputable citizen, or suitable family or to the care and custody of the Department. The significance of the distinction of giving the Department "the care and custody" of such minors and giving only "the care" to other entities is not explained.

The Department points out that Neb. Rev. Stat. § 43-285(1) (Cum. Supp. 1996) provides, in relevant part, that when a juvenile court awards a juvenile to the care of the Department in accordance with the Nebraska Juvenile Code, the Department "shall have the authority, by and with the assent of the court, to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed to it."

At the time of the juvenile court's decision in *In re Interest of G.B., M.B., and T.B.*, 227 Neb. 512, 418 N.W.2d 258 (1988), the last-quoted phrase was not in § 43-285 (Reissue 1984), but § 43-284 (Reissue 1984) provided in significant part: "The [Department] shall have the authority to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each child committed to it." The court in *In re Interest of G.B., M.B., and T.B.* held that that phrase gave the Department the sole authority to determine the child's care and placement, and the court pointed out that if the juvenile court did not like the placement selected by the Department, it was free to remove the child from the custody of the Department. That provision has since been removed from § 43-284, and the similar phrase, quoted above, has found its way into § 43-285. The change clearly gave the court the power to assent and, by implication, to dissent from the placement and other decisions of the Department, as well as of other entities to whom the court might commit the care of a minor. Although we are not here concerned with the juveniles' care or placement, this change certainly indicates the Legislature's intent to remove the Department's complete control of a minor whose care is given to the Department under the Nebraska Juvenile Code.

The Department argues that the court's order constitutes an improper attempt to "micromanag[e] the case that only [the Department] is authorized by law to handle." Brief for appellant at 5. We disagree. The Nebraska Juvenile Code must be liberally construed to accomplish its purpose of serving the best interests of the juveniles who fall within it. *In re Interest of R.A. and V.A.*, 225 Neb. 157, 403 N.W.2d 357 (1987). It is the law in this jurisdiction that juvenile courts have broad discretion to

accomplish the purpose of serving the best interests of the children involved. *Id.*

Neb. Rev. Stat. § 43-288 (Reissue 1993) provides, in significant part, as follows:

> If the court's order of disposition permits the juvenile to remain in his or her own home as provided by section 43-284 or 43-286, the court may, as a condition or conditions to the juvenile's continuing to remain in his or her own home, or in cases under such sections when the juvenile is placed or detained outside his or her home, as a condition of the court allowing the juvenile to return home, require the parent, guardian, or other custodian to:
>
> (1) Eliminate the specified conditions constituting or contributing to the problems which led to juvenile court action;
>
> . . . .
>
> (3) Give adequate supervision to the juvenile in the home;
>
> . . . .
>
> (6) Resume proper responsibility for the care and supervision of the juvenile.
>
> The terms and conditions imposed in any particular case shall relate to the acts or omissions of the juvenile, the parent, or other person responsible for the care of the juvenile which constituted or contributed to the problems which led to the juvenile court action in such case.

In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning. *In re Interest of G.B., M.B., and T.B., supra.* Section 43-288 gives the juvenile court explicit statutory authority to require the custodian of the juveniles to eliminate the specified conditions contributing to the problems which led to juvenile court action and to require the custodian to give adequate supervision to the juveniles in the home. In this case, the Department is the custodian, and therefore, the juvenile court may require it to give adequate supervision.

The situation in the case at hand is different from *In re Interest of David C.*, 6 Neb. App. 198, 572 N.W.2d 392 (1997), where this court held that a juvenile court does not have the

authority to order the Office of Juvenile Services in its supervision of a juvenile. The statutes concerning juveniles committed to the Office of Juvenile Services have provisions different from those statutes providing for the granting of custody of juveniles to the Department.

The Department does not really argue that the court's order is not intended to provide adequate supervision, or that it is unreasonable or an abuse of discretion under the evidence and circumstances of this case. In fact, the case plan indicates the Department's case manager made unannounced visits without the benefit of such an order. We therefore conclude that the statutes authorized the juvenile court to issue the order complained of and that it was justified. We affirm the juvenile court's order.

AFFIRMED.