IN RE INTEREST OF VERONICA H., A CHILD UNDER
18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. ARNOLDO T. AND
MELINDA O., APPELLEES, AND NEBRASKA DEPARTMENT
OF HEALTH AND HUMAN SERVICES, APPELLANT.
707 N.W.2d 29

Filed December 13, 2005.   No. A-05-425.

Jon Bruning, Attorney General, Royce N. Harper, and John M. Baker, Special Assistant Attorney General, for appellant.

No appearance for appellees.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

INBODY, Chief Judge.

## INTRODUCTION

The Nebraska Department of Health and Human Services (DHHS) appeals from the judgment of the separate juvenile court of Douglas County, Nebraska, ordering DHHS to reassign the case of Veronica H. to a more experienced case manager. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

On July 26, 2002, a petition was filed in the separate juvenile court alleging that Veronica, a minor child, was a child as described in Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002). The petition asserted that Veronica had been subjected to inappropriate sexual contact by her stepfather, Arnoldo T., and that Veronica's natural mother, Melinda O., had taken insufficient steps to protect Veronica; therefore, the petition alleged that Veronica was at risk for harm. On that same date, the separate

juvenile court entered an "Order for Immediate Custody," placing temporary custody of Veronica with DHHS. On April 8, 2003, Veronica was adjudicated as a child within the meaning of § 43-247(3)(a), with Arnoldo and Melinda admitting to the allegations in the petition. It was also ordered that Veronica remain in the temporary custody of DHHS "for appropriate care and placement." The matter was then set for disposition.

On June 6, 2003, a disposition and permanency planning hearing was held. At that time, the separate juvenile court ordered that Veronica remain in the temporary custody of DHHS for appropriate care, which was to exclude the parental home. The juvenile court found that the permanency objective was reunification and that reasonable efforts were being made to return Veronica to the parental home and to finalize permanency. The hearing was continued to August 21, and at that hearing, the juvenile court again ordered that Veronica remain in the temporary custody of DHHS and that placement of Veronica was to exclude the parental home. A review and permanency planning hearing was held on December 11, at which point the juvenile court again found that the permanency objective was reunification and that reasonable efforts were being made to return Veronica to the parental home and to finalize permanency. The court ordered Arnoldo and Melinda to complete psychological evaluations and complete any recommended treatment; to participate in individual and family therapy; to participate with a family support worker; to maintain safe, adequate, and consistent housing for themselves and their family; and to participate in a parenting program. Arnoldo was also ordered to complete a sex offender specific psychological evaluation.

Another review and permanency planning hearing was held on March 10, 2004. The court received numerous exhibits into evidence. Custody of Veronica remained with DHHS, which placed her at an enhanced treatment group home in Columbus, Nebraska. One of the exhibits accepted into evidence was a case plan and court report authored by LaKeisha Bonam, a case manager for DHHS. In her report, Bonam noted that Arnoldo had completed his sex offender evaluation and that Dr. Theodore DeLaet had done a psychological evaluation of Arnoldo.

The juvenile court asked Bonam for "a real concrete and coordinated recommendation for what kind of treatment, who's to go, what issues are to be addressed and by whom." The court further noted that it had numerous concerns regarding the instant case, including the lack of evaluations to answer questions regarding treatment and therapy for Veronica, Arnoldo, and Melinda; the lack of confirmation that therapy was occurring despite the lack of evaluations and progress reports; and the need for a concrete plan. Bonam informed the juvenile court that Dr. DeLaet was willing to work with Veronica, Arnoldo, and Melinda, and that the family would rather work with Dr. DeLaet than with other care providers. The juvenile court asked Bonam to provide a plan to the court within 2 weeks and asked that the plan provide for individual and family therapy with a goal of reunification. The court's order from the March 10, 2004, hearing noted that Dr. DeLaet was willing to work with the family, and Dr. DeLaet was asked to provide a plan and/or an outline of treatment, to be presented to the court within 2 weeks.

Between the March 10, 2004, hearing and the next hearing on July 30, Veronica's placement had changed from the enhanced treatment group home in Columbus to an enhanced treatment group home in Omaha, Nebraska. In addition, the case was assigned to DHHS' "Integrated Care Coordination Unit" and Michelle Mutum was assigned as the new case manager. At the July 30 hearing, numerous exhibits were again accepted into evidence. The juvenile court noted at the hearing that "things [we]re in order," that reunification remained as the permanency objective, that reasonable efforts were being made to return Veronica to the parental home and to finalize permanency, and that Veronica was to remain in the custody of DHHS for continued appropriate care and placement.

Another review and permanency planning hearing was held on November 16, 2004. More exhibits were entered into evidence, including a case plan and court report authored by Mutum; a mental health and substance abuse treatment plan by Dr. DeLaet and Veronica's therapist at the enhanced treatment group home in Omaha, Jean McKechnie; and a report from Veronica's guardian ad litem, as well as other reports. In her

case plan and court report, Mutum noted that Dr. DeLaet and McKechnie had developed a new visitation plan, and a joint letter from Dr. DeLaet and McKechnie set forth a precise plan as to treatment issues and interventions. However, the juvenile court expressed dissatisfaction with the reports that were offered. The court indicated that it expected both Dr. DeLaet and McKechnie—as well as any other therapists working with Veronica, Arnoldo, and Melinda—to testify. The court further referred the case to the "LB 1184 Treatment Team," indicating that "they are to look at everything from the inception, as I'm looking back, the many difficulties in this case, including the wrong kinds of evaluations [and] the conflict of interest with regard to some of the service provisions, like the family support worker and other issues." The court noted that "somebody has to get a grip on this case from a case management standpoint, and no one has it, and the Court lacks sufficient information to be that individual."

At a January 11, 2005, evidentiary hearing, Dr. DeLaet testified. He described his involvement in the case and described the types of therapies that he had provided. He further indicated that he would no longer be providing therapy in the instant case due to a disagreement with McKechnie regarding the course of therapy to be pursued. The hearing was then continued until January 14.

At the January 14, 2005, hearing, McKechnie testified. At the conclusion of McKechnie's testimony, the juvenile court expressed frustration with the professionals involved in the instant case, citing concerns with Veronica's lack of progress. The court stated as follows:

> [I]t's quite distressful to me to have to keep saying this, and I mean no offense. . . . Mutum is a fine individual and generally a fine caseworker, so this is not any personal reflection on her, but from the first day of disposition, this matter has been about [DHHS] and [its] total lack of accountability in terms of case management, in terms of any substantive understanding of the dynamics of incest cases and the treatment protocol in those cases and it continues.

Subsequently, the juvenile court ordered DHHS "to reassign this case to an experienced case manager with demonstrated

knowledge of incest cases and the needed treatment protocol to address these cases," stating as follows:

> I am ordering [DHHS] to assign [a different case manager.] And I want to know the name and approve it. . . . I want a seasoned, competent, experienced [DHHS] case manager with savvy and understanding of the dynamics of a case involving intrafamily sexual abuse, strong personalities . . . and that has to be demonstrated to me.

DHHS has timely appealed to this court.

## ASSIGNMENT OF ERROR

DHHS asserts that the separate juvenile court erred when it ordered DHHS to remove the case manager dealing with Veronica's case and replace her with a more experienced case manager.

## STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Corey P. et al.*, 269 Neb. 925, 697 N.W.2d 647 (2005).

Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Interest of Marie E.*, 260 Neb. 984, 621 N.W.2d 65 (2000).

## ANALYSIS

*Validity of Order.*

DHHS alleges that the separate juvenile court erred when it ordered DHHS to remove the case manager dealing with Veronica's case and to reassign the case to "an experienced case manager with demonstrated knowledge of incest cases and the needed treatment protocol to address these cases." DHHS asserts that the separate juvenile court lacks the authority to make such an order and that therefore, the order was made in error.

Article V, § 27, of the Nebraska Constitution provides the following language regarding the creation and powers of juvenile courts in Nebraska: "[T]he Legislature may establish

courts to be known as juvenile courts, with such jurisdiction and powers as the Legislature may provide." Therefore, juvenile courts are courts of limited jurisdiction. See *In re Interest of Wolkow*, 206 Neb. 512, 293 N.W.2d 851 (1980). Each county, depending on its population, has either a separate juvenile court or a county court with authority to sit as a juvenile court. *In re Interest of Jaden H.*, 263 Neb. 129, 638 N.W.2d 867 (2002). As a statutorily created court of limited and special jurisdiction, a juvenile court has only such authority as has been conferred upon it by statute. *Id.*

Neb. Rev. Stat. § 43-285(1) (Reissue 2004), a statute dealing with the care of juveniles who have been removed from the parental home, provides:

> When the court awards a juvenile to the care of [DHHS], an association, or an individual in accordance with the Nebraska Juvenile Code, the juvenile shall, unless other-wise ordered, become a ward and be subject to the guard-ianship of the department, association, or individual to whose care he or she is committed. Any such association and the department shall have authority, by and with the assent of the court, to determine the care, placement, med-ical services, psychiatric services, training, and expendi-tures on behalf of each juvenile committed to it. Such guardianship shall not include the guardianship of any estate of the juvenile.

This court has previously held that the phrase "by and with the assent of the court," which the Legislature elected to add to the language in § 43-285(1), "clearly [gives] the court the power to assent and, by implication, to dissent from the place-ment and other decisions of [DHHS], as well as of other entities to whom the court might commit the care of a minor." *In re Interest of Crystal T. et al.*, 7 Neb. App. 921, 927, 586 N.W.2d 479, 483 (1998). We further found that "this change certainly indicates the Legislature's intent to remove [DHHS'] complete control of a minor whose care is given to [DHHS] under the Nebraska Juvenile Code." *Id.*

In *In re Interest of Crystal T. et al.*, *supra*, this court dealt with a similar issue as presented by DHHS. In *In re Interest of Crystal T. et al.*, the juvenile court entered an order directing

DHHS to conduct 10 to 12 unannounced home visits at the home of a mother whose child was under the supervision of DHHS. DHHS appealed, arguing that "the court's order constitutes an improper attempt to 'micromanag[e] the case that only [DHHS] is authorized by law to handle.' " *Id.* at 927, 586 N.W.2d at 483. We disagreed with DHHS, noting the following:

> The Nebraska Juvenile Code must be liberally construed to accomplish its purpose of serving the best interests of the juveniles who fall within it. . . . It is the law in this jurisdiction that juvenile courts have broad discretion to accomplish the purpose of serving the best interests of the children involved.

(Citation omitted.) 7 Neb. App. at 927-28, 568 N.W.2d at 483.

We find that because juvenile courts have been given the power by the Legislature to assent and, by implication, to dissent from the placement and other decisions of DHHS, the juvenile court properly exercised that power when it ordered DHHS to replace the case manager dealing with Veronica's case with "an experienced case manager with demonstrated knowledge of incest cases and the needed treatment protocol to address these cases." The juvenile court had broad discretion in its attempt to best serve the interests of Veronica, and we find that the court's order did not abuse that discretion. This assignment of error is without merit.

*Separation of Powers.*

DHHS concedes that this court is not the proper forum in which to challenge the constitutionality of a statute. Nevertheless, DHHS does contend that "an order that dictates case management infringes on an essential legal right belonging to [DHHS] because it crosses the separation of powers boundary." Brief for appellant at 11. DHHS further contends that "state agencies [such as DHHS] have been given the power by the Legislature to manage their own work force, including job assignments. Neb. Rev. Stat. §81-1311(9) [(Reissue 1999)]. The Legislature did not grant this authority to the court." Brief for appellant at 12.

However, we noted earlier that through § 43-285(1), the Legislature gave juvenile courts the power to assent and dissent

from the placement and other decisions of DHHS, as well as of other entities to whom the court might commit the care of a minor, and that the Legislature intended to remove DHHS' complete control of a minor whose care is given to DHHS under the Nebraska Juvenile Code. Thus, we conclude that the Legislature, when it elected to add the phrase "by and with the assent of the court" to § 43-285(1), did in fact give juvenile courts the authority to issue orders such as that issued in the instant case.

This is a case of first impression in Nebraska. Looking to other jurisdictions for guidance, we find the reasoning in *In re K.C.*, 325 Ill. App. 3d 771, 759 N.E.2d 15, 259 Ill. Dec. 535 (2001), persuasive. In *In re K.C.*, the Illinois appellate court first found that the trial court had the statutory authority to remove or reassign a caseworker, as we have found in the instant case. When addressing whether the trial court's order requiring the Department of Children and Family Services (DCFS) to remove the current caseworkers and reassign the case to a new team of caseworkers violated the doctrine of separation of powers, the Illinois appellate court found the following:

> [T]he doctrine of separation of powers was not designed to achieve a complete divorce among the three branches of government, nor does it require governmental powers to be divided into rigid, mutually exclusive compartments. . . . When the legislature creates a statute that contemplates an interplay between the courts and the executive branch, court orders directing the actions of the executive agencies do not violate the doctrine of the separation of powers. . . . Under the Juvenile Court Act, where the legislature intends an interplay between DCFS and the courts in determining the appropriate services for neglected and abused children, the evil of the court's usurping the executive discretion is absent. . . .
>
> We do not find the court's action, in ordering the removal and reassignment of alternative caseworkers, impermissibly infringed upon the administrative discretion of DCFS, as an agency of the executive branch. As previously pointed out, the court here did not order that specific caseworkers be assigned to the matter. Rather, the court, having determined the current team of caseworkers had not

fulfilled its statutory obligation to report, simply ordered the removal and reassignment of an alternative team. The ultimate determination of which caseworkers to assign to the matter, therefore, remained within the discretion of DCFS. In our judgment, this interplay between DCFS and the court, in a situation where assigned caseworkers fail to satisfy a duty to report, is one that the legislature specifically contemplated and sanctioned under the [Juvenile Court] Act.

(Citations omitted.) *Id.* at 779-80, 759 N.E.2d at 23, 259 Ill. Dec. at 543.

We agree with the reasoning used by the Illinois appellate court. We believe that the Legislature must have contemplated the interplay between DHHS and the juvenile court when it added the phrase "by and with the assent of the court" to § 43-285(1). We therefore determine that the doctrine of separation of powers was not violated by the juvenile court's order. Whether the addition of the phrase "by and with the assent of the court" to § 43-285(1) renders the statute unconstitutional is neither before us nor possible for us to decide. This court cannot determine the constitutionality of a statute. *State v. Johnson*, 12 Neb. App. 247, 670 N.W.2d 802 (2003). Accordingly, we decline to address this issue.

## CONCLUSION

Finding that the separate juvenile court did not err when it ordered DHHS to remove the case manager dealing with Veronica's case and replace her with a more experienced case manager, we affirm the decision of the juvenile court in its entirety.

AFFIRMED.