Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/02/2016 09:10 AM CST

State of Nebraska, appellee, v.
Todd A. Wagner, appellant.

State of Nebraska, appellee, v.
Brandon B. Rohde, appellant.

___ N.W.2d ___

Filed December 2, 2016.    Nos. S-15-788, S-16-065.

1. **Constitutional Law: Statutes: Judgments: Appeal and Error.** The constitutionality and construction of a statute are questions of law, regarding which an appellate court is obligated to reach conclusions independent of those reached by the court below.

2. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

3. **____: ____: ____.** Components of a series or collection of statutes pertaining to a certain subject matter should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

4. **Criminal Law: Statutes: Legislature: Intent.** Although the rule of lenity requires a court to resolve ambiguities in a penal code in the defendant's favor, the touchstone of the rule of lenity is statutory ambiguity, and where the legislative language is clear, a court may not manufacture ambiguity in order to defeat that intent.

5. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

6. **Constitutional Law: Statutes.** It is the duty of a court to give a statute an interpretation that meets constitutional requirements if it can reasonably be done.

7. **Double Jeopardy: Intent.** The primary purpose of the Double Jeopardy Clause is to protect against multiple trials.

8. **Sentences: Double Jeopardy.** As to the protection against multiple punishments for the same offense, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the Legislature intended.

9. **Drunk Driving: Words and Phrases.** Under Neb. Rev. Stat. § 60-6,197.03(8) (Cum. Supp. 2014), "current violation" encompasses violations of both Neb. Rev. Stat. § 60-6,196 (Reissue 2010) and Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2016).

10. **Constitutional Law: Criminal Law: Statutes.** A penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

11. **Appeal and Error.** An appellate court will not address arguments that are too generalized or vague to be understood.

12. **Indictments and Informations.** The function of an information is twofold. With reasonable certainty, an information must inform the accused of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense.

13. ____. The information may use the language of the statute or its equivalent.

Appeals from the District Court for Lancaster County: Stephanie F. Stacy and Steven D. Burns, Judges. Affirmed.

Mark E. Rappl for appellant in No. S-15-788.

Joe Nigro, Lancaster County Public Defender, and Nathan Sohriakoff for appellant in No. S-16-065.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Kelch, and Funke, JJ., and Inbody, Judge.

Wright, J.

NATURE OF CASE

These two appeals involve identical charges, similar facts, and identical assignments of error and arguments. Therefore, although they were briefed and argued separately, it is

appropriate to address the two appeals in a single opinion. The defendants appeal the denial of their pleas in bar and motions to quash in relation to the application of Neb. Rev. Stat. § 60-6,197.03(8) (Cum. Supp. 2014) in sentencing them for the crime of refusal to submit to a chemical test as required by Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2016). Both defendants have three prior convictions for driving under the influence (DUI).[1] The defendants argue that the application of § 60-6,197.03(8) is inappropriate because the "current violation" referred to therein must mean a current DUI violation, and not a refusal violation. For the reasons set forth, we affirm.

## BACKGROUND

In case No. S-16-065, Brandon B. Rohde pled no contest to the refusal of a chemical test, with three prior convictions, under §§ 60-6,197 and 60-6,197.03(8), in relation to acts committed on April 13, 2015. In case No. S-15-788, Todd A. Wagner pled no contest to refusal of a chemical test, with three prior convictions, under §§ 60-6,197 and 60-6,197.03(8), in relation to acts committed on December 2, 2013. In both cases, the pleas were accepted and the defendants were found guilty of refusal of a chemical test, as prohibited by § 60-6,197.

Section 60-6,197(3) states that it is a crime to refuse to submit to a chemical test, while § 60-6,196 states that it is a crime to operate or be in control of a motor vehicle while under the influence of drugs or alcohol. But neither § 60-6,196 nor § 60-6,197 sets forth any punishment for those crimes.

Section 60-6,197.03 has 10 subsections, which are introduced by stating, "Any person convicted of a violation of section 60-6,196 or 60-6,197 shall be punished as follows." Subsection (8) of § 60-6,197.03 states that it applies to "such person" who has had three prior convictions and, "as part of the current violation," had a breath or blood alcohol concentration of .15 or above "or refused to submit to a test as required

---

[1] See Neb. Rev. Stat. § 60-6,196 (Reissue 2010).

under section 60-6,197." Subsection (8) provides for harsher penalties than subsection (7), which applies, "[e]xcept as provided in subdivision (8) of this section," to "such person" who has had three prior convictions and has an alcohol concentration of .08 or above.

The defendants filed pleas in bar alleging that application of § 60-6,197.03(8) would subject them to multiple punishments for the same offense by using the same act of refusing to submit to a chemical test as an element of the underlying crime of refusal, in violation of § 60-6,197, and as an element of "enhancement" under § 60-6,197.03(8). The defendants also filed motions to quash repeating this double jeopardy argument and further asserting that (1) the meaning of "current violation" in § 60-6,197.03(8) is a DUI under § 60-6,196, and not refusal under § 60-6,197; (2) § 60-6,197.03(8) is unconstitutionally vague and overbroad by failing to define "current violation"; (3) the enhanced charge under § 60-6,197.03(8) violates due process, because the prior convictions upon which the enhancement is based were for DUI's and not refusals; and (4) the application of § 60-6,197.03(8) is cruel and unusual punishment.

The courts denied the motions. As to the defendants' arguments concerning double jeopardy and the meaning of § 60-6,197.03(8), the courts concluded that "current violation" in § 60-6,197.03(8) was unambiguous and encompasses violations of either § 60-6,196 or § 60-6,197, as described in the introductory sentence of § 60-6,197.03. The courts found that the Legislature had determined to treat refusal and aggravated DUI (breath or blood alcohol concentration of .15 or above) similarly for purposes of determining penalties when a defendant has prior convictions. That determination was not enhancement, but, rather, as one court explained, "a choice the Legislature has made as to the category of the crime itself." The crime of refusal was "enhanced" only by the three prior convictions, and, as the other court reasoned, "referencing the underlying offense in this context does not equate to a second

prosecution for the same offense, nor does it result in multiple punishments for the same offense."

Upon evidence of three prior convictions, the courts sentenced the defendants in accordance with § 60-6,197.03(8). The defendants appeal.

## ASSIGNMENTS OF ERROR

The defendants both assign that the district court erred by overruling their (1) pleas in bar and (2) motions to quash.

## STANDARD OF REVIEW

[1] The constitutionality and construction of a statute are questions of law, regarding which we are obligated to reach conclusions independent of those reached by the court below.[2]

## ANALYSIS

### § 60-6,197.03: "as part of the current violation"

[2,3] The defendants' principal argument is that § 60-6,197.03(8) was meant to apply only to persons who violated the DUI statute, § 60-6,196, and not to persons who violated the refusal statute, § 60-6,197. In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[3] Components of a series or collection of statutes pertaining to a certain subject matter should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[4] We find no ambiguity or inconsistency in reading § 60-6,197.03(8) as encompassing underlying refusal violations. And we find it sensible to prevent prior offenders from avoiding, through the act of refusing a

---

[2] *State v. Perina*, 282 Neb. 463, 804 N.W.2d 164 (2011).

[3] *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011).

[4] See *State v. Raatz*, 294 Neb. 852, 885 N.W.2d 38 (2016).

chemical test, the greater penalty for having a breath or blood alcohol concentration of .15 or above, regardless of whether the underlying violation is refusal or DUI.

Section 60-6,197.03 sets forth the punishments for "[a]ny person convicted of a violation of section 60-6,196 or 60-6,197 . . . ." The version of § 60-6,197.03 in effect at the time of the defendants' crimes provided that any person convicted of a violation of § 60-6,196 or § 60-6,197 shall be punished as follows:

(1) Except as provided in subdivision (2) of this section, if *such person* has not had a prior conviction, such person shall be guilty of a Class W misdemeanor, and the court shall, as part of the judgment of conviction, order that the operator's license of such person be revoked for a period of six months . . . .

. . . .

(2) If *such person* has not had a prior conviction and, *as part of the current violation*, had a concentration of fifteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood or fifteen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath, such person shall be guilty of a Class W misdemeanor, and the court shall, as part of the judgment of conviction, revoke the operator's license of such person for a period of one year . . . .

. . . .

(7) Except as provided in subdivision (8) of this section, if *such person* has had three prior convictions, such person shall be guilty of a Class IIIA felony, and the court shall, as part of the judgment of conviction, order that the operator's license of such person be revoked for a period of fifteen years . . . .

. . . .

(8) If *such person* has had three prior convictions and, *as part of the current violation*, had a concentration of

fifteen-hundredths of one gram or more by weight of alcohol . . . *or refused to submit to a test* as required under section 60-6,197, *such person* shall be guilty of a Class III felony, and the court shall, as part of the judgment of conviction, revoke the operator's license of such person for a period of fifteen years . . . .

(Emphasis supplied.)

The defendants assert that the reference to "current violation" in § 60-6,197.03(8) is, at the very least, ambiguous. They argue that we must construe "current violation" as limited to a current DUI violation and as excluding a current refusal violation. They argue that this reading of the statute is required in light of the rule of lenity, the context of subsection (8) with the other language of the statute, and because construing subsection (8) as encompassing underlying refusal violations would impose double punishment. We find no merit to these arguments.

[4] Although the rule of lenity requires a court to resolve ambiguities in a penal code in the defendant's favor, the touchstone of the rule of lenity is statutory ambiguity, and where the legislative language is clear, we may not manufacture ambiguity in order to defeat that intent.[5] The language of § 60-6,197.03 is straightforward. Section 60-6,197.03 states that it is setting forth in its subsections the punishments for "[a]ny person convicted of a violation of section 60-6,196 *or* 60-6,197 . . . ." (Emphasis supplied.) Each subsection then refers back to "such person." We find that "such person" plainly refers to "[a]ny person convicted of a violation of section 60-6,196 *or* 60-6,197 . . . ." (Emphasis supplied.) And when certain subsections, such as subsection (8), refer to specified acts "as part of the current violation" of "such person," it is equally plain that "current violation" refers back to "a violation of section 60-6,196 *or* 60-6,197." (Emphasis supplied.)

---

[5] *State v. Ramirez*, 274 Neb. 873, 745 N.W.2d 214 (2008).

[5] "[C]urrent violation" thus plainly encompasses a violation of either § 60-6,196 or § 60-6,197. As the State points out, the defendants ask us to read a "DUI" violation into § 60-6,197.03(8), thereby excluding refusal violations. It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[6] As we will explain below, we reject the defendants' arguments that this reading of § 60-6,197.03(8) is in any way contrary to the language of the statute read as a whole, or to the Double Jeopardy Clauses of the U.S. and Nebraska Constitutions.

The defendants argue that by referring to the acts of having a breath or blood alcohol concentration of .15 or above or refusing to submit to testing as being "'part of'" the "'current violation,'" those acts must be something "above and beyond" the underlying violation charged.[7] They point out that evidence of refusing a chemical test in the context of a refusal violation is not an act "above and beyond" the violation.[8] The defendants reason that the act of refusing a chemical test must therefore refer only to evidence submitted as circumstantial evidence of a DUI violation.[9]

This argument misconstrues the meaning of the phrase "as part of." To be "part of" is not the same as to be "above and beyond." It means, in fact, the opposite. A "part of" something is a "piece" or "segment" of it.[10] Considering the phrase "as part of" in the context of § 60-6,197.03(8), the Legislature plainly utilized that phrase because of its broadness. The phrase "as part of" does not call into question our reading of the words "current violation."

---

[6] *State v. Raatz, supra* note 4.

[7] Brief for appellant in case No. S-15-788 at 19 and for appellant in case No. S-16-065 at 18.

[8] *Id.*

[9] See § 60-6,197(6).

[10] See Merriam-Webster's Collegiate Dictionary 844 (10th ed. 2001).

The defendants relatedly argue that we must read "current violation" as limited to a DUI violation, because such reading is the only reading that would be consistent with the use, in the same sentence, of the element of having a breath or blood alcohol concentration of .15 or above. Having an alcohol concentration of .15 or above, the defendants argue, is evidence of a DUI violation and an aggravator. It is not an essential element of a DUI violation and would not, as a practical matter, be evidence of a refusal violation. The defendants assert that the act of refusing a chemical test must concomitantly refer to the act of refusal only as an aggravator and as circumstantial evidence in a trial charging a DUI violation. They assert that it would be inconsistent for the Legislature to intend that the phrase "refused to submit to a [chemical] test" in § 60-6,197.03 also encompasses that act as an essential element of a refusal violation. We disagree. While the same words used in the same sentence are presumed to have the same meaning,[11] we find no reason to presume that these different words used in the same sentence must be restricted to a parallel status in relation to different underlying violations.

The defendants next argue that the Legislature expressed, through § 60-6,197.03(2), that it did not wish to treat people who have a breath or blood alcohol concentration of .15 or above the same as people who refuse chemical testing. In this regard, the defendants point out that, under subsection (2), a person who has no prior convictions is subject to a greater punishment only if, "as part of the current violation," that person had an alcohol concentration of .15 or above. There is no specific reference in § 60-6,197.03(1) or (2) to the act of refusal. A person without prior convictions who is convicted of refusal under § 60-6,197 (or who refused a chemical test as part of violating § 60-6,196) is punished under § 60-6,197.03(1) the same as a person who did not refuse a chemical test.

---

[11] See *State v. Covey*, 290 Neb. 257, 859 N.W.2d 558 (2015).

The defendants' assumptions about legislative intent is contrary both to the plain language of the subsections directly at issue and to the legislative history of § 60-6,197.03. The language, "or refused to submit to a test as required under section 60-6,197," was added by 2007 Neb. Laws, L.B. 578, to each of the provisions applicable to persons with prior convictions. These provisions had previously provided only for the punishment of a person who, as part of the current violation, had a breath or blood alcohol concentration of .15 or above. At the floor debate, Senator Kruse explained the reason for the amendment:

> During the summer we discovered that there is a bit of a loophole in there and so, as I say, make corrections. The bill stated that if a person is a repeat offender and has a high BAC [breath or blood alcohol concentration] that there's additional sanctions. Some persons have learned, through advice of their attorneys, to refuse the test and then, by current law, that would then be at .08. So this corrects that, makes a refusal of the test the same as the offense which is what we do in other parts of the statute, and really it's no more than that.[12]

The Legislature thus intended to prevent legally savvy offenders from avoiding, through refusal of a chemical test, the greater penalty for a breath or blood alcohol concentration of .15 or above. The Legislature presumably did not also add this "or refused" language to § 60-6,197.03(2), because persons without prior convictions would not have had the opportunity to be advised by an attorney of this legal loophole. For persons with prior convictions, however, there is no logical reason for this loophole to be closed only for persons who happen to be charged with a DUI violation rather than a refusal violation.

---

[12] Floor Debate, L.B. 578, General Affairs Committee, 100th Leg., 1st Sess. 33 (May 9, 2007).

[6] The defendants lastly argue that if we fail to read § 60-6,197.03(8) as limited to DUI violations, persons convicted of refusal violations would be subjected to multiple punishments for the same offense, in violation of the Double Jeopardy Clauses of the federal and Nebraska Constitutions. It is the duty of a court to give a statute an interpretation that meets constitutional requirements if it can reasonably be done.[13] However, the defendants misunderstand the principles prohibiting double jeopardy.

[7,8] The Double Jeopardy Clauses of both the federal Constitution and the Nebraska Constitution protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.[14] The primary purpose of the Double Jeopardy Clause is to protect against multiple trials.[15] Thus, as to the protection against multiple punishments for the same offense, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."[16]

The question of what punishments are constitutionally permissible is no different from the question of what punishment the legislative branch intended to be imposed.[17]

We have already answered the question of what the Legislature intended, as reflected by the plain language of § 60-6,197.03(8), and which is consistent with the statutory language as a whole and with sound policy. Nevertheless, the defendants argue that § 60-6,197.03(8), when applied to refusal violations, "'double dip[s]'" the act of refusal as a material element of the underlying refusal offense and as a

---

[13] *State v. Norman*, 282 Neb. 990, 808 N.W.2d 48 (2012).

[14] *State v. Ramirez, supra* note 5.

[15] *Missouri v. Hunter*, 459 U.S. 359, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983).

[16] *Id.*, 459 U.S. at 366.

[17] *Missouri v. Hunter, supra* note 15.

sentencing aggravator.[18] They assert that such "double dip-ping" is an inherent vice, contrary to principles prohibiting double jeopardy.

The cases cited by the defendants do not stand for this proposition. Rather, most of the cases cited by the defendants hold that the Legislature did not intend for the offender to be punished under both a specific statute providing for an increased punishment due to a specific aggravator and under a generally applicable enhancement statute based upon the same aggravator.[19] These courts reason that there is a presumption that the Legislature did not intend such double enhancement for the same act.

An enhancement is a fact that increases the punishment range to a certain range above what is ordinarily prescribed for the crime that was charged.[20] Double enhancement of a crimi-nal sentence occurs when a factor already used to enhance or aggravate an offense or penalty is reused to subject a defendant to a further enhanced or aggravated offense or penalty.[21]

The cases from other jurisdictions cited by the defend-ants are not controlling and are inapposite to the case at bar. The act of refusing a chemical test is not an aggravator for an underlying punishment that is then punished further under a separate statute. There is no punishment set forth in § 60-6,197 at all. Furthermore, unlike in those cases cited by the defendants, there is no ambiguity about whether a gener-ally applicable statute applies to a specific crime. The statutes

---

[18] Brief for appellant in case No. S-15-788 at 30 and for appellant in case No. S-16-065 at 32.

[19] See, e.g., *People v. Guevara*, 216 Ill. 2d 533, 837 N.E.2d 901, 297 Ill. Dec. 450 (2005); *People v. Ferguson*, 132 Ill. 2d 86, 547 N.E.2d 429, 138 Ill. Dec. 262 (1989); *Vennard v. State*, 803 N.E.2d 678 (Ind. App. 2004). Compare *State v. Jennings*, 106 Wash. App. 532, 24 P.3d 430 (2001).

[20] See, e.g., *Navarro v. State*, 469 S.W.3d 687 (Tex. App. 2015); *People v. Muhammad*, 157 Cal. App. 4th 484, 68 Cal. Rptr. 3d 695 (2007).

[21] See, e.g., *People v. Melvin*, 2015 IL App (2d) 131005, 37 N.E.3d 310, 394 Ill. Dec. 831 (2015).

here at issue fall under the narrowly tailored Nebraska Rules of the Road.[22]

We rely instead on a case in our jurisdiction. In *State v. Ramirez*,[23] we rejected the defendant's double jeopardy argument that the same prior conviction could not be used as both the element of being a felon in possession of a weapon and as a predicate offense for purposes of habitual criminal enhancement. At the time *Ramirez* was decided, Neb. Rev. Stat. § 28-1206 (Reissue 2008) stated that being a felon in possession of a firearm was a Class III felony, but it did not provide for specific sentencing dependent upon the number of prior convictions. We explained that the element of being a felon merely establishes "status" for the crime of violating § 28-1206.[24] We said that "[p]rohibiting a convicted felon from possessing a firearm neither punishes the felon for the underlying felony, nor enhances the sentence for another conviction—it is a new and separate crime of which the prior conviction is merely an element."[25]

Accordingly, we concluded that the use of the same felony conviction as an element of that underlying offense and as an element of enhancement under the habitual criminal statute "simply does not involve double penalty enhancement."[26] We said, "There is a significant distinction between double enhancement, which involves the 'stacking' of multiple enhancement provisions . . . and the use of a conviction to establish status and then enhance a sentence."[27] Being a felon in possession of a firearm was a Class III felony, with no indication it should be treated differently from any other Class III

---

[22] See Neb. Rev. Stat. §§ 60-601 to 60-6,383 (Reissue 2010 & Cum. Supp. 2016).

[23] *State v. Ramirez, supra* note 5.

[24] *Id.* at 883, 745 N.W.2d at 222.

[25] *Id.* at 884, 745 N.W.2d at 223.

[26] *Id.* at 883, 745 N.W.2d at 222.

[27] *Id.*

felony for purposes of sentence enhancement. Only the habitual criminal statute was a sentence enhancement.[28]

We squarely rejected in *Ramirez* the defendants' premise in this case that using the same act as an element of the underlying crime and as an element of enhancement inherently implicates double jeopardy. And it is even clearer here that double jeopardy is not implicated by the "double dipping" of refusal as an element of §§ 60-6,197 and 60-6,197.03(8), because § 60-6,197 sets forth no punishment. Without the provisions of § 60-6,197.03, there would be no sentencing statute for the violation of refusing a chemical test. The presumptive sentence for a person who refuses to submit to a chemical test and who has three prior convictions is set forth by subsection (8).

In other words, subsection (8) is the only sentencing provision that applies under these facts. There is no separate underlying crime for which the defendant is punished, and then an "enhancement" of that sentence. There are differing classes of punishment under § 60-6,197.03, depending on the surrounding facts of the underlying violations.

The court in *Navarro v. State*[29] noted that various subsections were effectively separate offenses and not enhancement provisions in a similar statutory scheme, setting forth one class of misdemeanor for driving while intoxicated and another class of misdemeanor for driving while intoxicated with a blood alcohol level of .15 or above. The subsections, the court explained, described specific types of forbidden conduct that affected the degree of the offense, and there was no enlargement of the sentence beyond that for which the crime was ordinarily prescribed.[30]

In such circumstances, where only one sentencing provision is applicable to a given set of facts, there is not multiple punishment as contemplated by the Double Jeopardy Clause.

---

[28] *Id.*

[29] *Navarro v. State, supra* note 20.

[30] *Id.*

We are perplexed by the defendants' insistence that the presumptive sentencing for their crimes is a Class IIIA felony as set forth in § 60-6,197.03(7) and that such sentencing has been "enhanced" to a Class III felony by § 60-6,197.03(8). This appears to be little more than a circular argument of their own making. By reading "current violation" as limited to DUI violations, the defendants conclude that subsection (7) provides the presumptive sentencing for their crimes, and thus, they argue that we must read § 60-6,197.03(8) as limited to DUI violations. But subsection (7) clearly states: "*Except as provided in subdivision (8) of this section*, if such person has had three prior convictions, such person shall be guilty of a Class IIIA felony . . . ." (Emphasis supplied.) And we have rejected the defendants' reading of "current violation."

[9] In conclusion, we find no reason to depart from our reading of § 60-6,197.03(8): "current violation" encompasses violations of both §§ 60-6,196 and 60-6,197. Section 60-6,197.03 may be a complex statute, but it not ambiguous. It plainly sets forth that it encompasses violations of either § 60-6,196 or § 60-6,197.

## UNCONSTITUTIONALLY VAGUE

[10] Having found § 60-6,197.03(8) to be unambiguous, we find no merit to the defendants' alternative argument that § 60-6,197.03(8) is unconstitutionally vague. Due process of law requires that criminal statutes be clear and definite.[31] A penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.[32] We do not seek mathematical certainty, but, rather, flexibility and reasonable breadth.[33] As applied to the defendants' violations of §§ 60-6,197 and 60-6,197.03(8), ordinary people could understand that they

---

[31] *State v. Pierson*, 239 Neb. 350, 476 N.W.2d 544 (1991).

[32] See *In re Interest of A.M.*, 281 Neb. 482, 797 N.W.2d 233 (2011).

[33] *Id.*

would be punished under § 60-6,197.03(8) if, as part of a violation of § 60-6,197, they refused a chemical test and had three prior convictions.

## Cruel and Unusual Punishment and Due Process

We next consider the defendants' due process and cruel and unusual punishment arguments in relation to their prior convictions. Operative January 1, 2012, before the defendants committed the acts leading to the current refusal convictions, the Legislature amended the statutory scheme so that "prior conviction" included either prior refusal or DUI convictions, i.e., to allow for cross-enhancement.[34] Before 2012, for a violation of § 60-6,196, "prior conviction" was defined as any conviction for a violation of § 60-6,196, and for a violation of § 60-6,197, "prior conviction" meant any prior conviction for violating § 60-6,197.[35] There was no cross-enhancement.

Since 2012, § 60-6,197.02 has stated:

(1) A violation of section 60-6,196 or 60-6,197 shall be punished as provided in sections 60-6,196.01 and 60-6,197.03. For purposes of sentencing under sections 60-6,196.01 and 60-6,197.03:

(a) Prior conviction means a conviction for a violation committed within the fifteen-year period prior to the offense for which the sentence is being imposed as follows:

(i) For a violation of section 60-6,196 [and section 60-6,197 the prior convictions described are identical]:

. . . .

(4) A person arrested for a violation of section 60-6,196 or 60-6,197 before January 1, 2012, but sentenced pursuant to section 60-6,197.03 for such violation on or after January 1, 2012, shall be sentenced according to the

---

[34] See 2011 Neb. Laws, L.B. 667.

[35] See § 60-6,197.02(1)(a)(i)(A) and (1)(a)(ii)(A) (Reissue 2010). See, also, *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

provisions of section 60-6,197.03 in effect on the date of arrest.

The defendants were arrested and sentenced after January 1, 2012. They argue it is disproportionate to elevate a misdemeanor to a felony based upon prior DUI convictions when there was no such "'cross-enhancement'" before 2012, at the time their prior DUI's were committed.[36] They assert this retroactive cross-enhancement violates the prohibition against cruel and unusual punishment and relatedly assert that their due process rights were violated by punishing them as repeat offenders when they had never before committed the crime of refusal.

The defendants concede that in *State v. Hansen*,[37] we said statutes expanding the "look-back" period for prior convictions do not violate ex post facto principles, because the habitual criminal statutes do not punish the defendant for previous offenses; instead, they punish the defendant's persistence in crime. Nevertheless, the defendants argue that redefining what constitutes a prior conviction is more significant than expanding the temporal scope of the prior convictions that can be used for purposes of enhancement. They also state that they are not making an argument based on ex post facto principles.

For their due process argument, the defendants cite only to *Weaver v. Graham*,[38] which refers to protection of preexisting entitlements, something not at issue here. The defendants do not specify whether they rely on principles of procedural or substantive due process or explain how "due process" connects to their conclusion that it is unconstitutional to use their prior DUI convictions to satisfy the elements of § 60-6,197.03(8).

[36] Brief for appellant in case No. S-15-788 at 27 and for appellant in case No. S-16-065 at 28.

[37] *State v. Hansen*, 258 Neb. 752, 755, 605 N.W.2d 461, 464 (2000).

[38] *Weaver v. Graham*, 450 U.S. 24, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

[11] We find that the due process issue raised by the defendants has been insufficiently argued for this court to address it. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[39] This court will not address arguments that are too generalized or vague to be understood.[40]

And we find no merit to the defendants' cruel and unusual punishment argument. The U.S. Supreme Court has upheld habitual criminal statutes against similar challenges, explaining that the harsher sentence is justified by the fact that those persons who commit repeated criminal acts have shown they are incapable of conforming to the norms of society as established by criminal law.[41] This justification does not depend on the previous crimes used for enhancement as being in violation of the same statutes for which the defendants are presently being convicted. We conclude that it was not cruel and unusual to subject the defendants to a harsher penalty for their current refusal convictions based on their previous DUI convictions.

## Insufficient Allegations

Finally, the defendants assert that the charging informations were defective because they failed to mirror the language of § 60-6,197.03(8) that "as part of the current violation," the defendants refused to submit to a test as required by § 60-6,197. The defendants concede that the informations alleged that under § 60-6,197.03(8), the defendants had refused to submit to a chemical test and had three prior convictions. For reasons that are not entirely clear, the defendants nonetheless argue that by excluding the "as part of the current

---

[39] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[40] *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

[41] See *State v. Johnson*, 290 Neb. 369, 859 N.W.2d 877 (2015), citing *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003).

violation" phrasing from the informations, the State failed to sufficiently allege Class III felonies under § 60-6,197.03(8) and that instead, they were charged only with Class IIIA felonies under § 60-6,197.03(7).

[12] The function of an information is twofold.[42] With reasonable certainty, an information must inform the accused of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense.[43] When an information alleges all the facts or elements necessary to constitute the offense described in the statute and intended to be punished, it is sufficient.[44]

[13] The information may use the language of the statute or its equivalent.[45] Here, it was sufficient for the State to make reference to §§ 60-6,197 and 60-6,197.03(8), to refusal, and to the three prior convictions. We find no merit to the defendants' assertion that the informations were defective.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the district court.

AFFIRMED.

STACY, J., not participating.

---

[42] *State v. Brunzo*, 262 Neb. 598, 634 N.W.2d 767 (2001).

[43] *Id.*

[44] *Chadek v. State*, 138 Neb. 626, 294 N.W. 384 (1940).

[45] See *Barton v. State*, 111 Neb. 673, 197 N.W. 423 (1924).